[No. 11027-3-III.   Division Three.   October 17, 1991.]

KEN DUNNING, ET AL, *Appellants*, v. BARBARA PACCERELLI, ET AL, *Respondents*.

*Charles R. Chatburn,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Maureen E. McGuire, Assistant,* for respondents.

THOMPSON, J. — In this action, Ken Dunning, John Hader, and Richard Becker allege the Department of Social and Health Services (DSHS) and three of its employees, negligently and in violation of their civil rights, caused their names to be placed on the State's "central registry" as reported child abusers. Former RCW 26.44.030, .070.[1] DSHS and the named social workers listed the plaintiffs' names on the registry after concluding the plaintiffs had failed to report child abuse at the J Bar D Boys Ranch, where they were employed. The Superior Court entered summary judgment for the defendants,. holding the social workers and DSHS had absolute immunity from liability for this act. We reverse.

On July 19, 1984, DSHS received a complaint from the mother of a boy who resided at the J Bar D Boys Ranch, which is a group home for emotionally disturbed boys near Ione, Washington. She stated that living conditions at the ranch were "filthy" and that her son had told her the older boys were abusing the younger ones. Janice Banning, a Child Protective Services caseworker from the Department's Colville office, was assigned to investigate. She interviewed several of the residents who told her about specific instances of sexual abuse and also stated they had reported at least some of the instances to the staff.

On July 31, 1984, Ms. Banning and Barbara Paccerelli, the children's services supervisor, interviewed the plaintiffs. Ms. Banning attests:

---

[1]Former RCW 26.44.030(1) provided:

When any practitioner, professional school personnel, registered or licensed nurse, social worker, psychologist, pharmacist, or employee of the department has reasonable cause to believe that a child or adult dependent person has suffered abuse or neglect, he shall report such incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040. The report shall be made at the first opportunity, but in no case longer than seven days after there is reasonable cause to believe that the child or adult has suffered abuse or neglect.

Laws of 1984, ch. 97, § 3. Under former RCW 26.44.070, DSHS maintained a "central registry" of reported cases of child abuse which was accessible by persons "directly responsible for the care and treatment of children . . . pursuant to chapter 74.15 RCW; . . .". Repealed by Laws of 1987, ch. 486, § 16.

[P]laintiff Becker revealed in his interview that he was aware of a practice at the ranch termed "open season." According to Mr. Becker, "open season" is the singling out of one resident to be physically attacked by all the others. According to information gathered from the residents, "open season" occurred on several occasions, "open season" was usually declared by staff, but may be declared by a child, and was used by staff as a deterrent to children who are inclined to run away from placement.

Plaintiffs told us they received verbal reports from residents of sexual activity between residents and did not believe the reports were true. None of the plaintiffs made a report to CPS or law enforcement as required by RCW 26.44.030. Based on the individual interviews I had with each plaintiff, I concluded that they were aware of incidents of sexual and/or physical abuse among children and failed to report as required by law.

Ms. Banning took handwritten notes of her interviews with the plaintiffs. The three plaintiffs told her that residents had come to them with a report of homosexual activity between two boys. However, the plaintiffs all maintained they had reason to believe the report was untrue. During the interview, Mr. Hader told Ms. Banning that he had written an internal report on the incident, but he did not identify to whom he submitted this report, nor did he produce a copy of the report at that time.

In their affidavits, the three plaintiffs state they investigated the allegation of homosexual activity by questioning the residents who had reported it to them; they determined these residents had not witnessed the activity. They also confronted the alleged participants and concluded the activity probably had not occurred, but was "a fabrication in an attempt by one of the boys to avoid a home leave he was scheduled for soon. [That boy] had tried this sort of thing before to 'get in trouble' so his home leave would be canceled." Attached to these affidavits are copies of reports which the three plaintiffs wrote and filed with the ranch's assistant director the day of the incident. In his affidavit, Mr. Becker also acknowledges he spoke of "open season" in his interview with Ms. Banning, but he specifically denies

saying the practice was initiated or condoned by the ranch staff.

DSHS removed several of the residents immediately; the State later revoked the ranch's license as a group care facility. By letters dated August 6, 1984, Ms. Paccerelli notified the plaintiffs the Department had found that they were aware of at least one incident of homosexual activity between residents at the ranch and did not report it as required by former RCW 26.44.030(1). Ms. Paccerelli stated this information would be placed in the Department's central registry in Olympia. She concluded:

> You have a right to supply information about your situation and a right to appeal this finding. The enclosed pamphlet will explain how to request a Fair Hearing.

The three plaintiffs' names were mailed to the central registry on August 16, 1984, along with the names of the ranch administrator and the owner.

The plaintiffs each sought administrative review of the decision, but a hearing was never held. On August 16, 1985, plaintiffs Hader's and Becker's administrative appeals were dismissed "with prejudice", pursuant to a stipulated motion and order. According to the stipulations, Mr. Hader and Mr. Becker complied with the spirit of the child abuse reporting requirements when they made an internal report of the incident. DSHS therefore agreed to remove their names from the registry. Mr. Dunning, who was proceeding pro se, appeared at the time scheduled for the hearing and was advised by the hearing examiner that DSHS had also withdrawn his name from the central registry, rendering the matter moot. According to the affidavit of Lawrence D. Briney, the assistant attorney general representing DSHS, the Department entered into the stipulations because it had already settled with the ranch owner and with the administrator, whom the Department regarded as the two main participants.

In July 1987, the plaintiffs filed in superior court the action from which this appeal is taken. They named as defendants DSHS and Ms. Banning, Ms. Paccerelli, and

Janet Thomas, who was the Colville Community Services Office Administrator for DSHS in 1984. They alleged the defendants had no "substantial credible evidence" that plaintiffs "neglected or failed to prevent or protect residents from abuse". The plaintiffs further alleged the investigation was unprofessionally done, violated Department guidelines, and DSHS had not adequately supervised the social workers who conducted the investigation.

As causes of action, the plaintiffs asserted the defendants (1) acted negligently; (2) violated the plaintiffs' right to due process and their right to employment under both the federal and state constitutions; (3) denied their rights under 42 U.S.C. § 1983;[2] (4) denied their constitutional right to privacy; and (5) committed the following torts: publication of an injurious falsehood, outrage, and wrongful interference with advantageous economic relations.[3] As damages, they averred emotional distress, injury to reputation, and loss of income due to closure of the ranch and their inability to find jobs in their chosen field while their names remained on the registry.

In their answer, the defendants claimed immunity from suit arising out of the conduct of their official duties. They also alleged res judicata as an affirmative defense, citing the earlier dismissals of the administrative appeals. The defendants subsequently moved for summary judgment.

In an oral opinion rendered on July 19, 1990, the Superior Court indicated it would grant the defendants'

---

[2]This cause of action was limited to the individual defendants. A state is not a "person" under the meaning of 42 U.S.C. § 1983. While a state may waive its sovereign immunity and consent to suit under section 1983 in a state court, our State has not done so. *Spurrell v. Bloch*, 40 Wn. App. 854, 864, 701 P.2d 529 (citing *Edgar v. State*, 92 Wn.2d 217, 595 P.2d 534 (1979), *cert. denied*, 444 U.S. 1077 (1980); *Rains v. State*, 100 Wn.2d 660, 674 P.2d 165 (1983)), *review denied*, 104 Wn.2d 1014 (1985).

[3]The plaintiffs also asserted the defendants committed defamation, wrongful use of civil proceedings, abuse of process, fraudulent misrepresentation, misrepresentation incorporated in a document, fraudulent misrepresentation of information required to be filed by statute, negligent misrepresentation, and putting plaintiffs in a false light in the public eye. They abandoned these causes of action during the summary judgment proceedings.

238

motion. It held that Mr. Becker and Mr. Hader, who had entered into the stipulated dismissals of their administrative fair hearing, were now barred from litigating the circumstances surrounding the investigation. Because the third plaintiff, Mr. Dunning, had not stipulated to dismissal, the court addressed the defendants' theory that DSHS and the individual defendants were immune from suit. The court considered *Babcock v. State*, 112 Wn.2d 83, 768 P.2d 481 (1989) (*Babcock* I), which held that DSHS and its caseworkers have absolute immunity from liability for negligent foster care investigation and placement. The court held that *Babcock* also applied to the facts presented by the plaintiffs. On July 24, 1990, the court entered an order granting DSHS's motion for summary judgment.

First, did the court err when it held the caseworkers and DSHS had absolute immunity from liability arising from their actions leading up to and including the placing of the plaintiffs' names on the central registry?

■ The trial court's holding was based upon *Babcock* I, which was reversed upon reconsideration. *Babcock v. State*, 116 Wn.2d 596, 809 P.2d 143 (1991) (*Babcock* II). The trial court did not have the benefit of *Babcock* II, which held that the caseworkers' actions in investigating and making foster care placements were neither quasi judicial nor quasi prosecutorial in character; thus, no absolute immunity attached. *Babcock* II, at 609, 610. Instead, the caseworkers were entitled only to a common law qualified immunity for foster care placement decisions. *Babcock* II, at 618. The court held that the caseworkers, in order to qualify for the immunity, had to "(1) carry out a statutory duty, (2) according to procedures dictated by statute and superiors, and (3) act reasonably". *Babcock* II, at 618 (citing *Guffey v. State*, 103 Wn.2d 144, 152, 690 P.2d 1163 (1984)).

The defendants attempt to distinguish *Babcock* II on its facts. They contend the reporting and investigating of pos-

sible child abuse, in contrast to foster care placement decisions, is quasi prosecutorial in nature. However, the federal courts have specifically declined to extend absolute immunity to caseworkers' investigations of child abuse. *See Babcock* II, at 612 (citing *Hodorowski v. Ray*, 844 F.2d 1210, 1212-16 (5th Cir. 1988); *Spielman v. Hildebrand*, 873 F.2d 1377 (10th Cir. 1989); *Achterhof v. Selvaggio*, 886 F.2d 826 (6th Cir. 1989)). The cases relied upon by the defendants are not on point. For example, in *Coverdell v. Department of Social & Health Servs.*, 834 F.2d 758 (9th Cir. 1987), the court held only that caseworkers have absolute immunity in connection with seeking and executing *court* orders. As in *Babcock* II, the gravamen of the plaintiffs' complaint here is negligent *investigation*.

The defendants next assert they are immune from liability pursuant to former RCW 26.44.060. The Legislature specifically provided:

> (1) Any person *participating in good faith* in the making of a report pursuant to this chapter . . . shall in so doing be immune from any liability arising out of such reporting . . . under any law of this state or its political subdivisions.

(Italics ours.) Laws of 1982, ch. 129, § 9. *See Spurrell v. Bloch*, 40 Wn. App. 854, 865-66, 701 P.2d 529, *review denied*, 104 Wn.2d 1014 (1985). Social workers and DSHS employees are among those persons listed in former RCW 26.44.030(1) as having a duty to report suspected child abuse.

Here, defendant Janice Banning's suspicions that plaintiffs were child abusers arose during the course of investigating a separate report made by the mother of a boy living at the ranch. Because Ms. Banning, with Ms. Paccerelli and Ms. Thomas, was also responsible for investigating the suspected abuse by the plaintiffs, the functions of reporting and investigating do not divide along an obvious line. To the extent the conduct of defendant caseworkers

consisted of *reporting* child abuse, they may seek to claim the statutory qualified immunity provided in RCW 26.44-.060. To the extent their conduct consisted of *investigating* reported child abuse, they may seek the protection of the common law qualified immunity recognized in *Babcock* II. Questions of material fact exist in either situation.

■ ■ The determination of good faith under RCW 26.44.060 necessarily presents issues of fact. "Good faith" is not defined in RCW 26.44.060. However, the reporting statute is framed in terms of reasonableness. The duty to report arises when there is "reasonable cause to believe" that abuse has occurred. RCW 26.44.030(1). In actions brought under 42 U.S.C. § 1983, which also measures official conduct by a standard of reasonableness, the courts have refused to employ a totally subjective standard when applying the good faith test for immunity. *Hocker v. Woody*, 95 Wn.2d 822, 825, 631 P.2d 372 (1981). Likewise, RCW 26.44.060(1) contemplates the caseworker must act with a reasonable good faith intent, judged in light of all the circumstances then present, before immunity will attach. The burden is on the caseworkers to prove they acted in good faith and thus are entitled to the statutory immunity afforded them in RCW 26.44.060(1).

The caseworkers attest they believed plaintiffs were aware of incidents of sexual abuse between children at the ranch. They formed this belief after talking with ranch residents and after interviewing the plaintiffs in the presence of an attorney. The caseworkers further assert their investigation followed all applicable regulations for investigating reports of child abuse. Former WAC 388-15-134 reads:

> (1) The department shall notify the . . . person alleged to be the abuser that the department has received a report alleging condition(s) specified in WAC 388-15-132 [child abuse or neglect] . . .
> (2) . . . the . . . alleged abuser . . . shall be provided the opportunity to supply information about the allegation and his situation. This person's response about the allegation and his situation including a written statement, if any, shall be a part of the department's case record.
> (3) The person . . . shall be notified that the information will be on file in the CSO.

(4) The person . . . shall be informed of the placement of his name as an abuser in the central registry.

(5) The person . . . shall be advised of his right to a fair hearing in accordance with chapter 388-08 WAC.

On the other hand, the plaintiffs state they told the caseworkers that the children who reported the sexual abuse had not witnessed it, and the alleged participants denied it. The plaintiffs also contend the caseworkers' investigation was cursory. They did not interview the physician who provided the residents with medical care; the nurse who inspected the ranch facilities for DSHS; nor the counselor at the high school the residents attended; all of whom, by affidavit, indicate they were not aware of any abuse or neglect of the residents. Finally, the plaintiffs attest that at the time of the interview they did not know they were the subjects of the investigation. They assert the attorney who was present during the interviews was the attorney for the owner of the ranch and did not represent them.

■ In reviewing a motion for summary judgment, the court construes facts in the light most favorable to the nonmoving party. *Wendle v. Farrow*, 102 Wn.2d 380, 383, 686 P.2d 480 (1984). The foregoing affidavits raise issues concerning Ms. Banning's good faith and whether the caseworkers (1) conducted an adequate investigation before they reached their conclusion that plaintiffs were aware of incidents of sexual abuse, and (2) followed the procedures outlined in former WAC 388-15-134. In this latter regard, a question exists whether the caseworkers' interviews of the plaintiffs satisfied the requirement of the WAC that the Department notify the alleged abuser of the report of abuse and provide him or her with the opportunity to supply information about the allegation.

Accordingly, we reverse the order of summary judgment which was entered in favor of the caseworkers and remand for trial.

■■ We also reverse the summary judgment in favor of DSHS. In *Babcock* II, the court cited RCW 26.44.060(3) as authority for its holding that DSHS could not claim the

common law qualified immunity of its caseworkers for negligent foster care placement. *Babcock* II, at 619. That subsection provides: "*Nothing in this chapter shall be construed as to supersede or abridge remedies provided in chapter 4.92 RCW* [which abolished sovereign immunity]". (Italics ours.) Thus, the court concluded it could not deprive those wronged by DSHS's actions of a remedy which the Legislature contemplated they would have when it enacted RCW 4.92. For the same reason, DSHS is not entitled to either the statutory qualified immunity provided for in RCW 26.44.060(1), or the common law qualified immunity for liability for its caseworkers' reporting and investigating child abuse.

█ Second, did the court err when it held Mr. Becker's and Mr. Hader's actions were barred by the earlier dismissal, with prejudice, of their administrative claims?

The pertinent preclusion doctrine is collateral estoppel.

> Collateral estoppel (issue preclusion) precludes relitigation of issues once *litigated and determined*, even though the cause of action in the subsequent suit is a different one, if the preclusion operates against a person who was a party to the first action.

(Footnotes omitted. Italics ours.) 15 L. Orland & K. Tegland, Wash. Prac., *Trial Practice — Civil* § 368, at 32-33 (4th ed. 1986).

█ The administrative hearing process never determined the propriety of placing the plaintiffs' names on the central registry. The issue was not litigated because DSHS removed Mr. Becker's and Mr. Hader's names from the registry and the parties stipulated to dismissal of the hearing procedure. Consent judgments "are not . . . ordinarily given issue preclusion effect." 15 L. Orland & K. Tegland § 367, at 30. The reason is that "the parties could settle for myriad reasons not related to the resolution of the issues they are litigating." *Marquardt v. Federal Old Line Ins. Co.*, 33 Wn. App. 685, 689, 658 P.2d 20 (1983) (citing Annot., *Modern Views of State Courts as to Whether Consent Judgment Is Entitled to Res Judicata or Collateral Estoppel Effect*, 91 A.L.R.3d 1170, § 6(a), at 1183 (1979)). *See also Krikava v.*

*Webber,* 43 Wn. App. 217, 222, 716 P.2d 916, *review denied,* 106 Wn.2d 1010 (1986). Thus, collateral estoppel does not operate to bar litigation of the issue central to Mr. Becker's and Mr. Hader's action.[4]

The cases the defendants rely upon are distinguishable. In *Rasmussen v. Allstate Ins. Co.,* 45 Wn. App. 635, 637, 726 P.2d 1251 (1986), *review denied,* 107 Wn.2d 1031 (1987), the court held that a written release discharging the defendant from all claims resulting from an automobile accident constituted a merger and bar of all existing claims. In contrast, the stipulated dismissals do not state Mr. Hader and Mr. Becker have released the defendants of all claims, including the tort and U.S.C. § 1983 actions which the administrative process had no authority to resolve. *State v. Dupard,* 93 Wn.2d 268, 275, 609 P.2d 961 (1980) notes only that decisions of administrative agencies *may* be accorded preclusive effect in subsequent litigation if the requirements of collateral estoppel or res judicata are met. We have held they were not met in this case.

Alternatively, defendants contend this court should affirm the summary dismissal on the ground that plaintiffs' causes of action for negligence, violation of 42 U.S.C. § 1983, and various torts fail as a matter of law. We have reviewed the defendants' arguments and find them to be either without merit or based upon a view of the facts which the plaintiffs dispute. Specifically, we hold the public duty doctrine does not shield the defendants from liability for negligence in the circumstances present here. A special relationship existed between the social workers and the plaintiffs which "creat[ed] a duty to perform a mandated act for the benefit of particular persons . . .". *Chambers-Castanes v. King Cy.,* 100 Wn.2d 275, 285, 669 P.2d 451, 39 A.L.R.4th 671 (1983) (quoting *Campbell v. Bellevue,* 85 Wn.2d 1, 10, 530 P.2d 234 (1975)). Under former WAC 388-15-134, plaintiffs were entitled to certain procedural protections. Their action alleges the defendants violated the

---

[4]Res judicata does not apply because there is no identity of causes of action in the fair hearing and the instant proceeding. *See Schoeman v. New York Life Ins. Co.,* 106 Wn.2d 855, 858, 726 P.2d 1 (1986).

WAC and thereby denied them those protections. The same allegation supports the plaintiffs' action for violation of their civil rights under 42 U.S.C. § 1983,[5] and plaintiffs' other tort claims.

█ Finally, the plaintiffs argue the trial court should have granted their motion for partial summary judgment. However, the denial of a motion for summary judgment is interlocutory and not an appealable ruling. *Herrmann v. Cissna*, 82 Wn.2d 1, 3, 507 P.2d 144 (1973); *Huston v. First Church of God*, 46 Wn. App. 740, 745, 732 P.2d 173, *review denied*, 108 Wn.2d 1018 (1987); *Rodin v. O'Beirn*, 3 Wn. App. 327, 332, 474 P.2d 903, *review denied*, 78 Wn.2d 996 (1970); RAP 2.2(a)(1). We therefore decline to address plaintiffs' motion in this appeal.

Reversed.

SHIELDS, C.J., and MUNSON, J., concur.

Reconsideration denied December 10, 1991.

Review denied at 118 Wn.2d 1024 (1992).

---

[5] 42 U.S.C. § 1983 states:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, . . .".