S02G1784. O'HERON et al. v. BLANEY et al.
(583 SE2d 834)

FLETCHER, Chief Justice.

We granted certiorari in this case to address the scope of the immunity defense for doctors who report suspected child abuse. Dr. Thomas Blaney and Jean Blaney sued Dr. Sara O'Heron and her employer, The Emory Clinic, after O'Heron made a report regarding suspected abuse by Thomas Blaney of his granddaughters. The trial court granted O'Heron summary judgment based on the immunity provided in OCGA § 19-7-5 (f). The Court of Appeals reversed.[1] Because the Court of Appeals failed to recognize that the statute provides immunity for those who have reasonable cause to make a report and for those who make a report in good faith, we reverse.

The Blaneys' daughter-in-law had first raised questions about possible abuse of her two small daughters after the children had spent the weekend with the Blaneys, their paternal grandparents, in Fayette County. The children's mother contacted a doctor, a social worker, and the Department of Family and Children Services in Columbia County, where she, her husband, and the children resided, regarding her observations and suspicions. Columbia County DFACS reported the allegations of abuse to the Fayette County DFACS. The mother also directly contacted the Fayette County Sheriff's department, which advised her to take the children to O'Heron for an examination. O'Heron examined the children and discussed the situation

---

[1] *Blaney v. O'Heron*, 256 Ga. App. 612 (568 SE2d 774) (2002).

with the mother. A detective with Fayette County was also present for the examination. Following her examination, O'Heron made a verbal report of suspected abuse to the detective, which she supplemented with a written report four days later. The Blaneys were arrested and indicted for various offenses including child molestation, sodomy, incest, and contributing to the deprivation of a minor. Sometime later, a new assistant district attorney was assigned to the case and presented it to a second grand jury, which issued a "no bill." The Fayette County District Attorney's office subsequently nolle prossed the charges under the initial indictment. Then the Blaneys sued O'Heron and Emory for malicious prosecution, professional malpractice and ordinary negligence.

1. Nearly 40 years ago, the legislature enacted Georgia's first law requiring the mandatory reporting of child abuse by physicians.[2] That first law contained an immunity provision providing that physicians who in good faith make a report of child abuse shall be immune from civil liability.[3] In numerous amendments to this law, the legislature has consistently expanded the reporting required and the immunity granted. The legislature has imposed the obligation to report on a wider variety of persons,[4] made reports easier to make and prove,[5] expanded the definition of abuse,[6] expanded immunity,[7] and imposed criminal penalties for the willful failure to make a report.[8] The legislature's conclusion that reporting is essential to protecting innocent children from abuse is abundantly clear. Furthermore, the legislature has specified that this law "shall be liberally construed so as to carry out the purposes thereof."[9] It is within this context that we must construe the requirements of OCGA § 19-7-5.

Subsection (c) (1) provides that specified persons, including physicians, "having reasonable cause to believe that a child has been abused shall report or cause reports of that abuse to be made as provided in this Code section." The report must include any information that "might be helpful in establishing the cause of the injuries and

---

[2] 1965 Ga. Laws 588, originally codified as Ga. Code Ann. § 74-111 (Harrison). The enactment of child abuse reporting statutes was a response to a 1962 article in the Journal of the American Medical Association that first identified child abuse as a medical condition and to a model statute proposed by the Children's Bureau of the Department of Health, Education and Welfare. See Caroline T. Trost, *Chilling Child Abuse Reporting: Rethinking the CAPTA Amendments*, 51 Vand. L. Rev. 183, 192 (1998).

[3] 1965 Ga. Laws 588.

[4] See 1968 Ga. Laws 1196, 1973 Ga. Laws 309, 1974 Ga. Laws 438, 1977 Ga. Laws 242.

[5] See 1974 Ga. Laws 438 (eliminating requirement of medical exam being made prior to report); 1980 Ga. Laws 921 (allowing photographs to be taken).

[6] See, e.g., 1981 Ga. Laws 1034.

[7] 1974 Ga. Laws 438 (providing immunity for voluntary reporters).

[8] 1977 Ga. Laws 242.

[9] OCGA § 19-7-5 (a).

the identity of the perpetrator." Under OCGA § 19-7-5 (f) any person who participates in the making of a report is immune from civil or criminal liability that would otherwise be incurred, "provided such participation . . . is made in good faith." This immunity also extends to the reporter's participation in any judicial or other proceeding resulting from the report.[10]

Reading these provisions together, we conclude that immunity may attach in two ways, either by showing that "reasonable cause" exists or by showing "good faith." Once a reporter has reasonable cause to suspect child abuse has occurred, she must report it or face criminal penalties. The trigger for the duty to report is "reasonable cause to believe,"[11] which requires an objective analysis. The relevant question is whether the information available at the time would lead a reasonable person in the position of the reporter to suspect abuse.[12] Once reasonable cause has been established under this standard, a reporter complying with the statutory mandate to make a report is, by definition, operating in good faith. Therefore, if the objective analysis supports the reporter's conclusion that child abuse has occurred, then immunity attaches and there is no need to further examine the reporter's good faith.[13]

On the other hand, if under an objective analysis, the information would not lead a reasonable person to suspect child abuse, the reporter may still have immunity if she made the report in good faith. Although we have not previously examined the meaning of good faith under this immunity provision, we held in *Anderson v. Little & Davenport Funeral Home* that good faith under another immunity statute is a subjective standard: " 'a state of mind indicating honesty and lawfulness of purpose; belief that one's conduct is not unconscionable or that known circumstances do not require further investigation.' "[14] In *Anderson*, we were construing the predecessor to OCGA § 31-11-8, which protects licensed ambulance services from civil liability arising out of the provision of emergency care. A subjective standard is even more appropriate under the child abuse reporting statute because it, unlike OCGA § 31-11-8, imposes criminal penalties. Thus, the relevant question is whether the reporter honestly believed she had a duty to report.[15] A reporter acting in good faith

---

[10] OCGA § 19-7-5 (f).

[11] OCGA § 19-7-5 (c) (1).

[12] 1976 Op. Att'y Gen. 76-131 (V).

[13] See *Warner v. Mitts*, 536 NW2d 564, 566 (Mich. App. 1995).

[14] 242 Ga. 751, 753 (251 SE2d 250) (1978).

[15] See also *Rite Aid Corp. v. Hagley*, 824 A2d 107 (Md. 2003) (good faith is subjective under immunity provisions of child abuse reporting statutes); *S.G. v. City of Monroe*, 843 So2d 657, 664 (La. App. 2d Cir. 2003) (same); *Purdy v. Fleming*, 655 NW2d 424, 432-433 (S.D. 2002); *Garvis v. Scholten*, 492 NW2d 402, 403 (Iowa 1992) (same).

will be immune even if she is negligent or exercises bad judgment.[16]

2. Having determined the proper legal analysis, we examine the summary judgment record de novo and in the light most favorable to the non-moving party.[17] O'Heron's affidavit in support of the motion for summary judgment details her examination and interviews with each child, in which the children used anatomically descriptive dolls to demonstrate how Thomas Blaney touched their vaginal and anal areas using his hands, mouth, tongue, and penis. No evidence contradicts the testimony of O'Heron and the Fayette County detective that the children made specific allegations of sexual contact by their grandfather. Furthermore, the medical director of the Child Protection Program at Egleston Children's Hospital, with whom the Fayette County district attorney consulted, concluded that the sexually explicit nature of these allegations by such young children raised a concern about the possibility of abuse. We conclude that, as a matter of law, the children's allegations are sufficient to cause a reasonable person to suspect that child abuse has occurred. Therefore, the trial court correctly entered summary judgment for O'Heron and Emory.

3. The court of appeals confused the two separate aspects of immunity under the statute, superimposing a requirement of reasonableness on the good faith standard. Under the court of appeals standard, even if a reporter has reasonable cause to believe that child abuse has occurred, a jury question could still exist on the issue of bad faith. This interpretation chills the reporting requirement and fails to honor the legislative goal of protecting children by encouraging the reporting of suspected child abuse. It furthermore would require a mandatory reporter to make a detailed investigation before making a report. Such an investigation is contrary to the statutory scheme that places the job of investigation on child welfare authorities and the criminal justice system.[18]

*Judgment reversed. All the Justices concur, except Sears, P. J., Benham and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

I believe that the Court incorrectly analyzes the immunity provided to reporters of child abuse by OCGA § 19-7-5, and then fails to consider evidence which makes summary judgment entirely inappropriate in this case.

1. The majority correctly holds that immunity from liability for reporting child abuse "may attach in two ways, either by showing

---

[16] *Michaels v. Gordon*, 211 Ga. App. 470, 473 (439 SE2d 722) (1993).

[17] *Youngblood v. Gwinnett Rockdale Newton Community Service Bd.*, 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001).

[18] OCGA § 19-7-5 (a), (e).

that 'reasonable cause' exists or by showing 'good faith[,]' " and that, once reasonable cause is established under an objective analysis, a reporter of child abuse "is, by definition, operating in good faith." (Maj. op. p. 873.) See *Warner v. Mitts*, 536 NW2d 564, 566 (Mich. App. 1995) (cited in footnote 13 of the majority opinion). However, a reading of subsections (c) (1) and (f) of OCGA § 19-7-5 together, as the majority purports to do, cannot lead to the conclusion that a purely subjective standard applies to the determination of "good faith" and that the only question relevant to that determination "is whether the reporter honestly believed she had a duty to report." (Maj. op. p. 873.) If that were true, then the majority's holding that reasonable cause necessarily implies good faith would clearly be wrong, because it is certainly possible for a reporter of child abuse to have an objectively reasonable cause to make the report and, at the same time, have a subjective, honest belief that abuse has not occurred.

As *Warner* itself states, " 'good faith' pertains to the existence of a reasonable suspicion. . . ." *Warner v. Mitts*, supra at 566. In examining statutory provisions which are substantially identical to OCGA § 19-7-5 (c) (1) and (f), a Washington appellate court pointed out that, although "good faith" is not defined, "the reporting statute is framed in terms of reasonableness. The duty to report arises when there is 'reasonable cause to believe' that abuse has occurred. [Cit.]" *Dunning v. Paccerelli*, 818 P2d 34, 38 (Wash. App. 1991). Because "good faith" must necessarily take into account the "reasonable cause" supporting the report, "good faith" cannot be judged by a wholly subjective standard.

When the Court of Appeals referred to the concepts of good faith and reasonable inquiry in other contexts, it was not "superimposing a requirement of reasonableness on the good faith standard." (Maj. op. p. 874.) The interplay between reasonableness and good faith arises from the statute itself. In construing OCGA § 19-7-5, the Court of Appeals was simply drawing a valid analogy to the duty of reasonable inquiry imposed in another good faith statute. *Blaney v. O'Heron*, 256 Ga. App. 612, 614-615 (568 SE2d 774) (2002). Under the analogous statute, the simple assertion of a subjective, honest belief cannot establish good faith. *Kendrick v. Funderburk*, 230 Ga. App. 860, 864 (3) (498 SE2d 147) (1998); *Kluge v. Renn*, 226 Ga. App. 898, 903 (4) (487 SE2d 391) (1997). Making a similar analogy, the court in *Dunning v. Paccerelli*, supra at 38, pointed out that, in "actions brought under 42 U.S.C. § 1983, which also measures official conduct by a standard of reasonableness, the courts have refused to employ a totally subjective standard when applying the good faith test for immunity. [Cit.]"

Therefore, I believe that, in order to have immunity under subsection (f) of OCGA § 19-7-5, the reporter of child abuse is required to

"act with a reasonable good faith intent, judged in light of all the circumstances then present. . . ." *Dunning v. Paccerelli*, supra at 38. However, the majority, in its zeal to encourage the reporting of suspected child abuse, has instead encouraged groundless reporting by extending the statutory immunity to all those who subjectively claim to honestly believe that child abuse has occurred, even if the basis for such belief is objectively unreasonable.

2. The majority concludes that, as a matter of law, the children's allegations are sufficient to cause a reasonable person to suspect that child abuse occurred. For this holding, it relies on the testimony of Dr. O'Heron and that of the Fayette County detective that the children made specific allegations of sexual contact by their grandfather. However, the detective was not even present for the interview of one of the children and never stated that she heard any particular statement regarding sexual abuse from either girl. The majority further relies on the letter of an expert to the assistant district attorney stating that the children's allegations raised a concern about the possibility of abuse. Even assuming that this letter was not inadmissible hearsay, it was rebutted by deposition testimony of a leading child abuse expert that Dr. O'Heron's interview of such young children could not be relied upon, was dangerous medicine, and was a breach of the standard of care. Although such negligence or bad judgment on the part of Dr. O'Heron may not prove the lack of her good faith under a subjective standard, it clearly is some evidence from which a trier of fact could find that she did not have *reasonable* cause to believe that the children's grandfather had abused them.

There is considerable evidence, including the deposition of Appellees' expert, that the findings in Dr. O'Heron's examination did not support her conclusion that the condition of one of the children was abnormal, much less that sexual abuse had occurred on a particular weekend nearly a month before. Furthermore, the Court of Appeals accurately held that the evidence which it extensively reviewed "as to O'Heron's subsequent testimony and prior actions raises material issues of motive, intent, honesty and 'moral obliquity.'" *Blaney v. O'Heron*, supra at 620. Therefore, there was not only evidence that Dr. O'Heron lacked reasonable cause to believe that the children's grandfather sexually abused them, but also that, judged in light of all the circumstances at the time, she did not act with a reasonable good faith intent.

Where, as here, the party responding to a motion for summary judgment "produces or points to any specific evidence, even slight, in the record giving rise to a triable issue of material fact, then summary judgment must be denied by the trial court. [Cits.]" *Five Star Steel Constr. v. Klockner Namasco Corp.*, 240 Ga. App. 736, 738 (1) (a) (524 SE2d 783) (1999). Thus, I believe that the trial court errone-

ously granted summary judgment. Accordingly, I dissent to this Court's reversal of the judgment of the Court of Appeals.

I am authorized to state that Presiding Justice Sears and Justice Benham join in this dissent.

DECIDED JUNE 30, 2003 —
RECONSIDERATION DENIED JULY 30, 2003.

*Allen & Weathington, Hunter S. Allen, Jr., Kara A. Hicks*, for appellants.

*Moraitakis, Kushel & Pearson, Albert M. Pearson III*, for appellees.

*Carlock, Copeland, Semler & Stair, Thomas S. Carlock, Daniel J. Huff, Eric J. Frisch, Rogers & Hardin, Robert B. Remar, Garland, Samuel & Loeb, Donald F. Samuel, Jackson & Schiavone, George T. Jackson, Nicholas A. Lotito*, amici curiae.