[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1257 
David Kenneth Marks sued Dr. Thomas W. Tenbrunsel, Dr. Lois H. Pope, and Alabama Psychological Services Center, LLC. The defendants filed a motion for a Rule 12(b)(6), Ala. R. Civ. P., dismissal of the case for failure to state a claim, which the trial court granted. Marks appeals; we affirm.
 I. Facts and Procedural History
Marks contacted Alabama Psychological Services Center, LLC, to obtain psychological treatment. Marks met with Dr. Thomas W. Tenbrunsel, a psychologist employed by Alabama Psychological Services, at its offices. According to Marks, Dr. Tenbrunsel assured him that anything Marks disclosed during their meeting would remain confidential. Marks then admitted to fondling the genitals of two females under the age of 12. Marks claims that "[a]fter consulting with a colleague, Dr. Tenbrunsel announced to Marks that he would not honor [the confidentiality agreement]." (Marks's brief at xvi.) Marks alleges in his complaint that Dr. Lois H. Pope was the colleague with *Page 1258 
whom Dr. Tenbrunsel consulted. Marks further alleges that Dr. Tenbrunsel informed him that "a report [of the suspected child abuse] would be made to Child Protective Services at the Madison County Department of Human Resources."
Marks sued Dr. Tenbrunsel, Dr. Pope, and Alabama Psychological Services, alleging malpractice, misrepresentation of material facts, fraud, and fraudulent deceit. According to Marks, the defendants' actions caused Marks to be prosecuted for his admitted sexual misconduct. He also alleged other damage, including mental anguish, health problems, and monetary loss.
Dr. Tenbrunsel, Dr. Pope, and Alabama Psychological Services moved for a judgment of dismissal pursuant to Rule 12(b)(6), Ala. R. Civ. P., on the basis that Marks had failed to state a claim upon which relief could be granted. The trial court granted that motion, and this appeal followed.
 II. Standard of Review "On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala. 1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772
(Ala.Civ.App. 1989). The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala. 1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App. 1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala. 1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala. 1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala. 1986)."
Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993).
 III. Analysis A. Statutory Immunity
The defendants argue that they are immune from civil liability arising from their reporting of suspected child abuse. Section26-14-9, Ala. Code 1975, grants immunity to certain persons, firms, corporations, and officials who report child abuse to the appropriate authorities. Included in those granted immunity by that section are persons and entities that are required, pursuant to § 26-14-3, Ala. Code 1975, to report suspected child abuse. Section 26-14-3 states:
 "(a) All hospitals, clinics, sanitariums, doctors, physicians, surgeons, medical examiners, coroners, dentists, osteopaths, optometrists, chiropractors, podiatrists, nurses, school teachers and officials, peace officers, law enforcement officials, pharmacists, social workers, day care workers or employees, mental health professionals, members of the clergy as defined in Rule 505 of the Alabama Rules of Evidence, or any other person called upon to render aid or medical assistance to any child, when the child is known or suspected to be a victim of child abuse or neglect, shall be required to report, or cause a report to be made of the same, orally, either by telephone or direct communication immediately, followed by a written report, to a duly constituted authority." *Page 1259 
(Emphasis added.) Marks argues that the defendants in this case were not "called upon to render aid or medical assistance to any child" within the meaning of § 26-14-3 and therefore are not entitled to the immunity afforded by § 26-14-9.
Section 26-14-3, however, is not the only Code section that authorizes the reporting of suspected child abuse. Section26-14-4, Ala. Code 1975, provides: "In addition to those persons, firms, corporations, and officials required by Section 26-14-3
to report child abuse and neglect, any person may make such a report if such person has reasonable cause to suspect that a child is being abused or neglected." (Emphasis added.) In the instant case, because Marks admitted the abuse to Dr. Tenbrunsel, the defendants had reasonable cause to suspect that a child was being abused. Therefore, while Dr. Tenbrunsel and Dr. Pope were not required by § 26-14-3 to report the abuse, they werepermitted to do so under § 26-14-4.
In Hall v. Van's Photo, Inc., 595 So.2d 1368 (Ala. 1992), a case ignored by Marks, the plaintiffs sued a photography shop after its vice president notified the FBI that the plaintiffs had the photo shop develop nude pictures of their three-year-old son. This Court held that the photo shop had reasonable cause to make the report pursuant to the permissive reporting provision of §26-14-4. The Court also applied § 26-14-9, as that section provided at the time Hall was decided, and affirmed the trial court's summary judgment for the photo shop based on the immunity provided by § 26-14-9. At the time Hall was decided, § 26-14-9
read:
 "`Any person, firm, corporation or official participating in the making of a report or the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed.'"
595 So.2d at 1370. The plaintiffs in Hall argued that there existed a genuine issue of material fact as to whether the photo shop had promised to keep the photographs confidential. This Court rejected that argument and held that the photo shop was entitled to immunity under § 26-14-9. Therefore, even if we assume that Marks could prove a promise of confidentiality or some other similar understanding between him and Dr. Tenbrunsel, Marks would have no remedy in damages for a breach of that promise if the defendants are afforded immunity under § 26-14-9.
The Legislature amended § 26-14-9 in 1998. That section now provides:
 "Any person, firm, corporation or official, including members of a multidisciplinary child protection team, quality assurance team, child death review team, or other authorized case review team or panel, by whatever designation, participating in the making of a good faith report in an investigation or case review authorized under this chapter [Chapter 14] or other law or department practice or in the removal of a child pursuant to this chapter, or participating in a judicial proceeding resulting therefrom, shall, in so doing, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed."
(Emphasis added.) We conclude that the initial reporting of suspected child abuse to the appropriate authorities is part of the investigation contemplated by Chapter 14, Ala. Code 1975. Therefore, a person who makes such a report or causes such a report to be made is to be considered a person who "participat[es] in the making of a good faith report in an investigation or case review authorized under [Chapter 14]," and is therefore entitled to the benefit of the immunity granted by §26-14-9, *Page 1260 
as amended. See Preamble to Act No. 98-371, Ala. Acts 1998 ("An Act, To amend Section . . . 26-14-9 . . . to provide immunity from liability for investigations and actions to members of multidisciplinary child protection and other case review teamsand for good faith reporting of suspected child abuse or neglect."). Construing § 26-14-9 to limit the availability of immunity from liability to only those persons reporting suspected child abuse after an investigation has already begun would deprive persons of the incentive to make an initial report of child abuse, thereby drastically frustrating the legislative purpose in enacting Chapter 14.[1] See Ex parte Meeks,682 So.2d 423, 428 (Ala. 1996) ("`A construction [of a statute] resulting in absurd consequences as well as unreasonableness will be avoided.'" (quoting Norman J. Singer, Sutherland StatutoryConstruction, § 45.11, p. 61 (5th ed. 1993))).
The immunity from liability provided by § 26-14-9 for reporting suspected child abuse applies only to one who makes such a report in good faith. The year before the Legislature adopted the "good faith" requirement, this Court, in Evans v. Waddell,689 So.2d 23 (Ala. 1997), construing the predecessor to § 26-14-9, held that defendants who had allegedly induced others to make falsereports of child abuse were protected by absolute statutory immunity from liability for those reports. In the next session of the Legislature, § 26-14-9 was amended to add the requirement that the report of suspected child abuse be made in "good faith" as a prerequisite to immunity from liability. See Act No. 98-371, Ala. Acts 1998.
In Abbott Laboratories v. Durrett, 746 So.2d 316, 339 (Ala. 1999), this Court restated the rule that "`it is permissible in ascertaining [the purpose and intent of a statute] to look to the history of the times, the existing order of things, the state of the law when the instrument was adopted, and the conditions necessitating such adoption.'" (quoting In re Upshaw,247 Ala. 221, 23 So.2d 861 (1945)). On other occasions, this Court has recognized an obvious nexus between judicial decisions and subsequent legislation. See, e.g., Clark v. Jefferson Fed. Sav. Loan Ass'n of Birmingham, 571 So.2d 1032, 1034 (Ala. 1990) ("The Alabama legislature amended §§ 43-2-60 and -61 in response to [Tulsa Professional Collection Services, Inc. v. Pope,485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988),] to remedy the procedural defect apparent in those statutes: the provision for constructive notice only, regardless of whether the creditors were known or reasonably ascertainable."); State Dep't ofRevenue v. Reynolds Metals Co., 541 So.2d 524, 526 (Ala. 1988) ("In response to [Ex parte City of Leeds, 473 So.2d 1060 (Ala. 1985)], the Legislature amended Code 1975, § 11-51-91, effective April 29, 1986."). We do so again in this instance. The addition by the Legislature of a good-faith requirement to § 26-14-9, in response to this Court's holding in Evans v. Waddell, indicates the Legislature's intent to withhold immunity from those *Page 1261 
who, in bad faith, cause the making of false reports of child abuse.
This conclusion is buttressed by the purpose of Chapter 14: "In order to protect children whose health and welfare may be adversely affected through abuse and neglect, the legislature hereby provides for the reporting of such cases to the appropriate authorities." § 26-14-2, Ala. Code 1975. Sections26-14-3 and 26-14-4, along with the immunity granted by §26-14-9, are therefore intended to promote the reporting of child abuse. In light of the clear legislative purpose of Chapter 14, along with the fact that the decision in Evans, which applied § 26-14-9 to protect persons who made false reports of child abuse, was immediately followed by the addition to §26-14-9 of the requirement of "making a good faith report," we construe the standard of good faith in § 26-14-9 as amended to apply only to the basis for a report of suspected child abuse, not to the conduct of the reporting person in his or her dealings with an alleged perpetrator of child abuse. Any other construction would stifle the reporting of bona fide instances of child abuse, contrary to the expressed legislative purpose of Chapter 14, and would protect the perpetrator, thereby emasculating the legislative purpose of promoting the reporting of suspected child abuse.
Under the permissive reporting provision of § 26-14-4, the existence of reasonable cause triggers the authority to make a report. We hold that if a person has "reasonable cause to suspect that a child is being abused or neglected," then that person acts in "good faith" within the meaning of § 26-14-9 when making a report authorized under § 26-14-4.[2] Because Marks admitted to the abuse of the two children, Dr. Pope and Dr. Tenbrunsel had reasonable cause to suspect that children were being abused.[3] Therefore, we conclude that Dr. Tenbrunsel and Dr. Pope were acting in good faith within the meaning of §26-14-9 when they determined that a report should be made.
 B. Psychotherapist-Patient Privilege
Marks relies substantially on the psychotherapist-patient privilege, which he says trumps the immunity granted by §26-14-9. The psychotherapist-patient privilege is stated in Rule 503, Ala. R. Evid.:
 "(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family."
The Advisory Committee's Notes to Rule 503, Ala. R. Evid., refer to § 34-26-2, Ala. Code 1975, stating: "Alabama statutory law has long recognized a psychologist-client privilege. Ala. Code 1975, § 34-26-2." Section 34-26-2 provides that confidential communications between psychologists, psychiatrists, psychological technicians, and their clients are privileged to *Page 1262 
the same extent as communications between an attorney and his or her clients.
Section 26-14-9, the immunity provision of the child-abuse reporting statutes, was originally enacted in 1965, two years after the Legislature first codified the psychotherapist-patient privilege in § 34-26-2. Ten years after that, the Legislature enacted § 26-14-4, the permissive reporting provision. In BlueCross Blue Shield of Alabama v. Hodurski, 899 So.2d 949 (Ala. 2004), we acknowledged the restatement of the doctrine of implied repeal:
 "`"`"Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. . . ."
 "`"`Implied repeal is essentially a question of determining the legislative intent as expressed in the statutes. When the provisions of two statutes are directly repugnant and cannot be reconciled, it must be presumed that the legislature intended an implied repeal, and the later statute prevails as the last expression of the legislative will.'"'"
Blue Cross Blue Shield, 899 So.2d at 959-60 (quotingFletcher v. Tuscaloosa Fed. Sav. Loan Ass'n, 294 Ala. 173,177, 314 So.2d 51, 55 (1975), quoting in turn State v. BayTowing Dredging Co., 265 Ala. 282, 289, 90 So.2d 743, 749
(1956)).
The last expression of legislative will is § 26-14-9, which confers immunity to persons who make good-faith reports of child abuse pursuant to Chapter 14. Section 26-14-4, which provides for permissive reporting of suspected child abuse, applies to "any person" making such a report. This latter act, § 26-14-9, impliedly repeals anything to the contrary in the earlier enacted § 34-26-2, which recognizes a psychotherapist-patient privilege. The rule that implied repeal is disfavored when the earlier act is specific and the subsequent act is general does not apply here.[4] Chapter 14, entitled "Reporting of Child Abuse or Neglect," is not a general or broad act that cannot impliedly repeal an earlier specific act.[5]
Other jurisdictions have held that the psychotherapist-patient privilege must yield to child-abuse reporting laws. In Fewell v.Besner, 444 Pa.Super. 559, 568, 664 A.2d 577, 581 (1995), the Superior Court of Pennsylvania stated:
 "Thus, the psychotherapist-patient privilege and the confidentiality provisions of the [Mental Health Procedures Act] must yield to the immunity provision of the [Child Protective Services Law]. Cf., People v. John B., 192 Cal.App.3d 1073, 237 Cal.Rptr. 659
(1987) (holding that psychotherapist-patient privilege is not absolute and must yield to the reporting requirements outlined in California's Child Abuse Reporting Act); State ex rel. D.M. v. Hoester, . . . 681 S.W.2d 449 (1984) (holding that child abuse reporting statute vitiated physician-patient privilege and psychiatrist could be compelled to reveal alleged sexual abuser's medical records in a civil action for damages); People v. Gearhart, 148 Misc.2d 249, 560 N.Y.S.2d 247 (1990) (holding *Page 1263 
that the overriding purpose of child abuse reporting statutes is to protect children and the physician-patient privilege cannot be asserted when there is a conflict with child abuse reporting requirements)."
 C. Self-Incrimination
Marks argues that the compelled disclosure of confidential communications made during psychotherapy would violate hisFifth Amendment privilege against self-incrimination. The defendants correctly point out that Marks did not make the argument to the trial court as a basis for the denial of the defendants' motion to dismiss.
"This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt OilCo., 612 So.2d 409, 410 (Ala. 1992). In his reply brief, Marks contends that he did indeed raise his self-incrimination argument in the trial court. In support of this contention he states that "since testimonial privileges are rooted in common law and are authorized in the 14th Amendment, [he] asserted theFifth Amendment every time [he] used the word Privilege." (Marks's reply brief at 20.) In his answer to the defendants' motion to dismiss, Marks did use the word "privilege." He did so in reference to § 34-26-2, Ala. Code 1975, which makes communications between psychotherapists and their patients confidential. However, Marks made no mention of the privilege against self-incrimination anywhere in his complaint or in his answer to the defendants' motion to dismiss. We are not satisfied that Marks's reference to the privilege recognized in § 34-26-2 for psychotherapist-patient communications was sufficient to afford the trial court an opportunity to rule on Marks's self-incrimination argument. We therefore do not consider that argument on appeal.
Marks argues that his pro se status excuses his procedural error. He states in his reply brief, "[w]hile I have not researched the issue, I feel confident this Court makes accommodations for unintended procedural errors by pro se litigants." First of all, this Court is not obligated to review the record for plain error. And this Court has no obligation in the context here presented to conduct research for an appellant, regardless of whether that party is represented by counsel or appears pro se. McLemore v. Fleming, 604 So.2d 353, 353 (Ala. 1992) ("`[I]t is neither our duty nor [our] function to perform all of the legal research for an appellant.'" (quoting Gibson v.Nix, 460 So.2d 1346, 1347 (Ala.Civ.App. 1984))). Moreover, we are not aware of any case in which this Court has given a party, based on the party's pro se status, the benefit of an exception to the rule that an appellate court cannot consider arguments made for the first time on appeal. Because Marks did not argue to the trial court that the child-abuse reporting statutes violated his privilege against self-incrimination, we conclude that he did not preserve for appeal any error based upon that argument.
 IV. Conclusion
Dr. Tenbrunsel and Dr. Pope are immune, under to § 26-14-9, from any civil or criminal liability resulting from their good-faith report of suspicions of child abuse. Marks can prove no facts alleged in his complaint that would remove Dr. Tenbrunsel or Dr. Pope from the purview of § 26-14-9, and dismissal was therefore proper. Because Alabama Psychological Services' alleged liability is based on the liability of the individual doctors, it too was entitled to a dismissal. While Marks presents *Page 1264 
interesting policy arguments dealing with the incentive of sex offenders to seek treatment and the importance of protecting confidential communications in general, these arguments should be directed to the Legislature, not to this Court.
On appeal, Marks attaches as an appendix to his appellate brief Dr. Tenbrunsel's response to Marks's request for admissions. The response is not a part of the record before us, and we therefore do not consider the response on appeal. See Gotlieb v. Collat,567 So.2d 1302, 1304 (Ala. 1990) ("[T]his Court is limited to a review of the record alone, and the record cannot be changed, altered, or varied on appeal by statements in briefs of counsel."). The defendants have filed in this Court a motion to strike Dr. Tenbrunsel's response. Marks argues that Dr. Tenbrunsel's failure to file his response in the trial court constitutes an abuse of discovery. This contention was not previously raised in the trial court. The fact remains uncontroverted that the trial court did not consider the response to Marks's request for admissions, and we therefore cannot base a reversal of the trial court's judgment of dismissal upon that response. Totten v. Lighting Supply, Inc., 507 So.2d 502, 503
(Ala. 1987) ("[A]n issue not reflected in the record as having been raised in the trial court cannot be raised for the first time on appeal."). The defendants' motion to strike the response is granted.
MOTION TO STRIKE RESPONSE GRANTED; AFFIRMED.
NABERS, C.J., and STUART, SMITH, and BOLIN, JJ., concur.
SEE, HARWOOD, and WOODALL, JJ., concur in the result in part and dissent in part.
PARKER, J., dissents.
[1] Section 26-14-2, entitled "Purpose of chapter," provides as follows:
 "In order to protect children whose health and welfare may be adversely affected through abuse and neglect, the legislature hereby provides for the reporting of such cases to the appropriate authorities. It is the intent of the legislature that, as a result of such efforts, and through the cooperation of state, county, local agencies and divisions of government, protective services shall be made available in an effort to prevent further abuses and neglect, to safeguard and enforce the general welfare of such children, and to encourage cooperation among the states in dealing with the problems of child abuse."
[2] The question whether a person who makes a report of suspected child abuse pursuant to § 26-14-4 without reasonable cause to suspect that a child is being abused or neglected ever acts in good faith is not now before us.
[3] It is not necessary to decide in this case whether only aconfession to child abuse supports a finding of "reasonable cause to suspect that a child is being abused or neglected" under § 26-14-4.
[4] We noted in Blue Cross Blue Shield, supra, that "`"the policy against implied repeals has peculiar and special force when the conflicting provisions, which are thought to work a repeal, are contained in a special or specific act and a later general or broad act."'" (quoting Connor v. State in reBoutwell, 275 Ala. 230, 234, 153 So.2d 787, 791 (1963), quoting in turn 50 Am. Jur Statutes § 561).
[5] Justice See's dissenting opinion would eliminate the repugnancy here by introducing a judicial exception to the sweep of the later act.