947 So.2d 539 (2006)
Elizabeth L. URQUHART and Henry T. Urquhart, Appellants,
v.
Andrea S. HELMICH, Appellee.
No. 1D06-1439.
District Court of Appeal of Florida, First District.
December 27, 2006.
Rehearing Denied February 7, 2007.
*540 R. Frank Myers of Pearson & Myers, P.A., Tallahassee, for Appellants.
Robert G. Churchill, Jr., and Craig A. Dennis of Dennis, Jackson, Martin & Fontela, P.A., Tallahassee, for Appellee.
PADOVANO, J.
This is an appeal from a final summary judgment for the defendant in a civil action for intentional infliction of emotional distress. The complaint was based on a claim that the defendant, a medical doctor, had erroneously reported to state authorities that the plaintiff's infant daughter may have been abused. We conclude that the doctor is immune from civil liability to the plaintiffs and we therefore affirm.
The plaintiffs, Elizabeth and Henry Urquhart, took their then twenty-eight day old daughter to the Fort Walton Beach Medical Center emergency room on May 12, 2002, because she was having difficulty breathing. When the Urquharts arrived at the hospital the immediate danger had passed, but they reported to the emergency room technicians that the child had just experienced an episode in which she could not breathe and was turning blue. The defendant, Dr. Andrea Helmich, was the pediatrician on call at the hospital that day. She examined the infant and decided to admit her to the hospital for testing and observation.
During the course of her hospital stay, the infant experienced another episode in which she was having difficulty breathing. Dr. Helmich ordered a CT scan, and the radiologist who interpreted the scan told her that the child had suffered a skull fracture. According to the radiologist, the fracture was caused either by child abuse or by birth trauma.
The Urquharts told Dr. Helmich that when the infant was born, the obstetrician attempted to remove her from the birth canal with forceps. Although the infant was eventually delivered by cesarean section, they suggested that the earlier use of the forceps may have caused the injury the radiologist had observed on the CT scan. Dr. Helmich recommended several other *541 tests to determine the cause of the infant's medical problem, but the Urquharts declined to allow these tests to be performed on their child. The relationship between Dr. Helmich and the Urquharts began to deteriorate and it ended in several verbal confrontations. Dr. Helmich did not think that the skull fracture was caused by trauma during the birth of the child, and she reported the fracture to state authorities as an injury that may have been caused by abuse or neglect.
In their complaint, the Urquharts alleged that Dr. Helmich reported the injury to the state child abuse hotline out of a sense of spite because she was angry about the arguments they had with her in the hospital. They also alleged that Dr. Helmich was attempting to "get back at them" for bothering her during her busy work day and for arguing with the nurses about the infant's treatment. Based on these assumptions, they concluded that Dr. Helmich made the report not out of a sense of duty, but rather to "flex her power over them."
Dr. Helmich moved for a summary judgment and submitted affidavits of several other doctors in support of her motion. Doctor Barry Riggs, the radiologist who originally interpreted the CT scan, signed an affidavit in which he recounted his impressions about the test and his conversation with Dr. Helmich. He stated that he believed the infant had suffered a skull fracture and that, although this could have been consistent with birth trauma, the likelihood that the fracture was caused by birth trauma was "substantially reduced," given the fact that the infant had been delivered by cesarean section. Dr. Riggs also stated in his affidavit that he concurred with Dr. Helmich's decision to report the injury to the hotline. Two other doctors, Randall C. Alexander and Robert F. Shelton, also signed affidavits in which they concluded that Dr. Helmich had a duty under the circumstances to make the report in question.
The Urquharts argued that the summary judgment should be denied because there were disputed factual issues. They argued that Dr. Helmich was angry with them and that she had a motive to reject their explanation that the injury may have been caused by the use of forceps during birth. Additionally, they presented the results of a subsequent CT scan. The radiologist who interpreted this test did not think that the infant had suffered a fracture. This finding was not disputed for the purpose of the motion for summary judgment.
The trial court focused on the facts known at the time Dr. Helmich made the report and concluded that she was immune from civil liability as a matter of law. Based on this conclusion, the trial court granted summary judgment for Dr. Helmich. The Urquharts now appeal to this court.
Whether a doctor is immune from civil liability for making an allegedly false child abuse report depends on the application of two related statutes. Section 39.203, Florida Statutes affords a general grant of immunity to a person who makes a report of child abuse in good faith. Section 39.201, Florida Statutes, is more specific, in that it establishes a mandatory reporting requirement for medical doctors and other health care professionals who have reasonable cause to suspect that a child has been abused or neglected.
The good faith immunity afforded by section 39.203 applies broadly to any person who makes a report of child abuse. In this provision, the legislature left room for the possibility that the reporting procedure might be used for an improper purpose. If an unfounded report is made by a *542 spiteful neighbor or a vengeful former spouse, the parent of the child has some legal recourse. The parent may assert a claim, and the person making the report would be immune from liability only if the report was made in good faith. In some cases, it might be difficult to resolve the issue of good faith without a trial.
But the immunity that is afforded to a medical doctor who discovers possible child abuse in the course of a medical examination is not the same as that afforded to an ordinary citizen. A doctor who has reasonable cause to suspect child abuse is required under section 39.201, Florida Statutes to report the abuse. Failure to make the report is a crime. See § 39.205, Fla. Stat. (2005). Because the report is required by law, it is not necessary to determine whether it was made in good faith. The doctor's feelings about the child's parent or caretaker, whatever they might be, are irrelevant.
We should not consider the mandatory reporting requirement and the general immunity provision in isolation as if they had no connection with each other. These statutes address related subjects and therefore they must be interpreted together in a way that harmonizes the law. See Maddox v. State, 923 So.2d 442 (Fla.2006); State v. Espinosa, 686 So.2d 1345 (Fla. 1996); Holmes County Sch. Bd. v. Duffell, 651 So.2d 1176 (Fla.1995). Interpreting the two statutes in isolation would lead to a conclusion that the legislature has exposed a doctor to civil liability for doing nothing more than what it has required the doctor to do under penalty of law. That result would be unreasonable and inconsistent with the meaning of both statutes.
Reading the two statutes together, we conclude that there are two ways in which a doctor can be immune from civil liability for making an incorrect report of child abuse. Immunity exists as a matter of law if the doctor has reasonable cause to suspect that the child has been abused and makes a report of the abuse as required by law. In that event, there is no need to determine whether the doctor acted in good faith. See O'Heron v. Blaney, 276 Ga. 871, 583 S.E.2d 834 (2003) (interpreting nearly identical provisions in the Georgia statutes); see also Marks v. Tenbrunsel, 910 So.2d 1255, 1258-61 (Ala.2005). As the court explained in O'Heron, once reasonable cause has been shown, "a reporter complying with the statutory mandate to make a report is, by definition, operating, in good faith." 583 S.E.2d at 836. However, the absence of reasonable cause does not prove liability; it merely removes the immunity that would otherwise apply as a matter of law. If the objective evidence does not support a conclusion that the doctor had reasonable cause to make the report, the doctor may nevertheless claim immunity from civil liability by showing that the report was made in good faith.
Whether a medical doctor has reasonable cause to suspect that a child has been abused is a question of law. The phrase "reasonable cause" is used in section 39.201, Florida Statutes to describe a legal standard, and in this respect, it is no different from legal standards that are applied in other areas of the law. For example, the existence of reasonable suspicion to justify a temporary detention is a question of law, as is the existence of probable cause to search a person. As with these standards, reasonable cause to suspect child abuse either exists on the facts known to the person taking the action or it does not. Whether the standard has been met under a given set of facts is a question of law.
*543 A doctor may have reasonable cause to suspect that a child has been abused, even though the parent has given an innocent explanation for the child's injuries. It is reasonable to assume that a parent might attempt to explain an injury by something short of a confession to child abuse. In any event, the history given by the parent is only one factor the doctor must rely on in assessing the likely cause of the injury. The issue of reasonable cause is not transformed from a question of law into a question of fact to be resolved by a jury merely because the parent has advanced an alternative cause of the child's injury.
On the facts presented here, we have little doubt that Dr. Helmich had reasonable cause to suspect child abuse. The radiologist told her that he believed the child had suffered a skull fracture. Although the apparent fracture could have been caused by trauma during birth, the radiologist told Dr. Helmich that it was more likely caused by child abuse. Dr. Helmich suggested other medical tests before she called to make the report, but the Urquharts declined to allow her to conduct those tests.
The plaintiffs emphasize the fact that a subsequent CT scan showed that the infant's skull had not been fractured. That is immaterial. The question is not whether child abuse actually occurred, but whether there was reasonable cause to suspect that it had occurred. That is a question that can only be answered by considering the facts that were known at the time the report was made.
For these reasons, we conclude that it is not necessary to determine whether the report of child abuse was made in good faith. Because Dr. Helmich had reasonable cause to suspect that the infant had been abused, she is immune from civil liability as a matter of law. The summary judgment in this case was properly entered.
Affirmed.
LEWIS and THOMAS, JJ., concur.