[No. 20343-3-III. Division Three. May 9, 2002.]

ROBERT YUILLE, ET AL., *Appellants*, v. THE STATE OF WASHINGTON, ET AL., *Defendants*, KENNETH FELDMAN, ET AL., *Respondents*.

*Dennis C. Cronin* (of *Hearrean & Cronin*) and *Paul B. Mack*, for appellants.

*Kimberly D. Baker* (of *Williams, Kastner & Gibbs, L.L.P.*) and *Howard M. Goodfriend* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*), for respondents.

SWEENEY, J. — Washington encourages the reporting of child abuse—even suspected child abuse. *Whaley v. State*, 90 Wn. App. 658, 668, 956 P.2d 1100 (1998). It even encourages such reporting to the extent that failure to report child abuse is punishable as a gross misdemeanor. RCW 26.44.080. Predictably then, those reporting child abuse are immune from liability so long as they act in good faith. Here, Dr. Kenneth Feldman and Children's Hospital and Medical Center (Hospital) conducted a multidisciplinary evaluation of a prospective adoptive mother and child. And based upon that work-up, Dr. Feldman concluded that Kristi Yuille, the prospective adoptive mother, suffered from Munchausen syndrome by proxy (MSBP), a psychological disorder that results in the mother purposely harming her child. He therefore recommended removing the child from the home. The adoption fell through. And the Yuilles sued Dr. Feldman and the Hospital.

The question before us is whether the Yuilles met the threshold factual showing of bad faith to avoid summary dismissal of their claims against Dr. Feldman and the Hospital. We conclude that they did *not* and affirm the trial court's summary dismissal of their claims.

## HISTORY

In 1992, Robert and Kristi Yuille applied with Oregon's Open Adoption and Family Services, Inc., to adopt a child. The agency was worried about Ms. Yuille's extensive illnesses. Her doctor speculated she might have Munchausen syndrome.[1] Ms. Yuille underwent a psychological evalua-

---

[1] A type of psychological disorder in which the person may practice self-mutilation and deception in order to feign illness, and when detected, the person

tion. The psychologist concluded she did not suffer from the syndrome.

In July 1993, the adoption agency placed a newborn boy, Dakota, with the Yuilles. After placement, Dakota suffered breathing difficulty, vomiting, apnea, reflux, cyanosis, diarrhea, accidental ingestions, and seizures. The adoption counselor expressed concern. Dakota's doctor assured the counselor that everything was fine. The adoption was finalized.

The Yuilles applied to adopt a second child. In August 1995, the adoption agency placed Wyatt with the Yuilles. Shortly thereafter, the Yuilles moved from Oregon to Republic, Washington. The agency informed the Yuilles they would have to file a petition for adoption in Washington. No petition was ever filed.

Again, Wyatt's adoption counselor became concerned about Wyatt's recurring illnesses. Wyatt suffered symptoms similar to those suffered by Dakota. Dr. Tim Seppa, Wyatt's doctor, expressed concern for Wyatt—in Ms. Yuille's care. The doctor opined that Wyatt's illnesses may be either induced or grossly exaggerated by Ms. Yuille. Another of Wyatt's doctors told the counselor that he had been concerned that Ms. Yuille may have caused Wyatt's illnesses. But he no longer thought that was the case.

In February 1996, Dr. Seppa again expressed his concerns about Ms. Yuille to the adoption agency's director. He opined that Ms. Yuille might suffer from MSBP.[2] He suggested the agency contact two California experts. It did. And those experts in turn recommended that Dr. Feldman evaluate the children. Dr. Feldman is a pediatrician in Seattle and a frequent consultant at Children's Hospital and Medical Center.

---

will leave one hospital and appear in the emergency room of another. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 1249 (17th ed. 1993).

[2] MSBP includes the deliberate production or feigning of physical symptoms in another person, usually a child, who is under the individual's care. The person suffering from MSBP then presents the child for treatment and disclaims any knowledge of the source of the child's symptoms. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 781-82 (4th ed. 1994).

Dr. Feldman reviewed Wyatt's birth records and medical records. Those records reflected that Wyatt's condition improved during hospitalizations and each symptom started in Ms. Yuille's presence.

Dr. Feldman also reviewed both Dakota's and Ms. Yuille's medical records. Dakota's history was similar to Wyatt's. Ms. Yuille claimed to have been ill more than 50 percent of the time since late grade school. One of her physicians had diagnosed Munchausen syndrome.

A team at the Hospital evaluated Wyatt. The objective findings did not match the descriptions of the medical problems reported by Ms. Yuille. A psychiatric nurse practitioner believed it was probable that Ms. Yuille suffered from MSBP. She recommended Ms. Yuille undergo a further psychological evaluation, and recommended removing the children from the home.

Dr. Feldman reported the similarity and severity of both children's medical findings, the onset of life-threatening events in Ms. Yuille's presence, and the reduction in symptomatology during hospitalizations. For him these suggested MSBP.

The Hospital's Children's Protection Team concluded that it was medically probable that Ms. Yuille suffered from MSBP. And both Dakota and Wyatt had been her victims. The team recommended removing both children.

Child Protective Services then removed the children from the Yuilles' custody. Dakota was removed from the home and temporarily placed in foster care. But he was returned to his father's custody on March 6, 1996, on the condition that Ms. Yuille not reside in the family home. Another family adopted Wyatt.

## PROCEDURE

The Yuilles sued the Department of Social and Health Services (DSHS), Dr. Feldman, Children's Hospital, the Children's Protection Team, the adoption agency, and others associated with this case. The Yuilles sued Dr. Feldman

and the Hospital for outrage, negligent infliction of emotional distress, invasion of privacy, civil conspiracy, alienation of affection, negligent investigation, medical malpractice, and violation of the Fourteenth and Fourth Amendments of the United States Constitution. They alleged that Dr. Feldman wrongfully diagnosed Ms. Yuille with MSBP. And this resulted in the removal of the children.

Dr. Feldman and the Hospital moved for summary judgment. The court granted their motion and dismissed the Yuilles' case against them. First, the court concluded that the Yuilles had no standing to bring any action related to Wyatt's removal because they were not his legal guardians. Second, the court concluded that Dr. Feldman and the Hospital were entitled to the good faith immunity accorded to health care providers who report suspicions of child abuse. RCW 26.44.060(1)(a). This second issue is dispositive for us.

## IMMUNITY

The Yuilles argue that Dr. Feldman and the Hospital are entitled to immunity only if they acted in good faith. And here that is a question of fact. They argue that Dr. Feldman is not a psychologist and MSBP is a psychological disorder. And they complain that he did not even review all of the records. Dr. Feldman and the Hospital respond there is nothing here to support even an inference of bad faith.

STANDARD OF REVIEW

■ ■ The court concluded that Dr. Feldman and the Hospital were both entitled to immunity as a matter of law because there was an inadequate showing that the report was *not* made in good faith. We review a summary dismissal de novo. *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 581-82, 5 P.3d 730 (2000). Facts and all reasonable inferences therefrom are considered in the light most favorable to the nonmoving party. *Id.* at 582. Summary judgment is appropriate when there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law. *Id.*

GOOD FAITH

[A]ny person participating in *good faith* in the making of a report pursuant to this chapter or testifying as to alleged child abuse or neglect in a judicial proceeding shall in so doing be immune from any liability arising out of such reporting or testifying under any law of this state or its political subdivisions.

RCW 26.44.060(1)(a) (emphasis added). Health care providers must report abuse if they have reasonable cause to believe a child has been abused. RCW 26.44.030(1)(a). Failure to make such a report is punishable as a gross misdemeanor. RCW 26.44.080.

■ The report must be made in good faith to shelter the author from liability. RCW 26.44.060(1)(a). The reporter has the burden of proving the report of abuse was made in good faith. *Whaley*, 90 Wn. App. at 668.

■ We pass on the crucial question here—whether the reporter acted with a reasonable, good faith intent—in light of all the circumstances. *Id.* at 669 (citing *Dunning v. Pacerelli*, 63 Wn. App. 232, 240, 818 P.2d 34 (1991)). Good faith flows from a "mind indicating honesty and lawfulness of purpose." *Id.* (citing *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986)). Good faith is wholly a question of fact. But if reasonable persons could reach but one conclusion, summary judgment is appropriate. *Id.* at 668.

The Yuilles complain that Dr. Feldman and the Hospital reported the abuse here without properly verifying medically that any abuse occurred. Even assuming this is correct, it is insufficient. The statute does not require that the information giving rise to the suspicion of abuse be investigated or verified before it is reported. *Id.* The duty to investigate lies with the authorities, not the individual making the report. *Id.* So the failure to verify or investigate does not rule out immunity. *See* RCW 26.44.050; *Whaley*, 90 Wn. App. at 668.

The purpose behind the immunity is clear. It is to encourage those in the position to suspect child abuse to report it. *Whaley*, 90 Wn. App. at 668. And this purpose would be undermined if immunity fell with a showing that the report was unverified or lacked investigation. *Id.*

The questions raised by this appeal have been the subject of an earlier appeal involving these same defendants. The analysis and disposition there are instructive. *Miles v. Child Protective Servs. Dep't*, 102 Wn. App. 142, 6 P.3d 112 (2000), *review denied*, 142 Wn.2d 1021 (2001). There, the plaintiffs claimed that Dr. Feldman and the Hospital negligently and recklessly diagnosed MSBP and made treatment recommendations based upon that erroneous diagnosis. *Id.* at 158. Dr. Feldman and the Hospital, among other things, claimed immunity under RCW 26.44.060(1)(a). *Id.* at 159. The court held "[a]ssuming without holding that Dr. Feldman negligently diagnosed MSBP," the parties were still immune, as a matter of law. *Id.* In *Miles*, the defendants worked with other health care professionals and members of the Hospital's multidisciplinary team. *Id.* So even if mistakes were made, the court held the parties believed they were acting in the best interests of the children. And, therefore, they acted in good faith. *Id.*

The material facts here are the same. Dr. Feldman consulted with many of the children's doctors. He talked with the adoption agency. He worked with the Hospital's multidisciplinary team. He reviewed the children's medical records. Many, although not all, reported that the children were not becoming ill naturally. The Yuilles' two children were not biologically related. And yet they had similar, unusual medical problems. And their symptoms decreased or disappeared when they were in the care of health care providers.

Reasonable minds could not differ here. Dr. Feldman had a good faith belief the children were being abused. He candidly acknowledged the disadvantages of removing the children from what was otherwise a nurturing environment. But he indicated he had to consider the risks to the

children as well. He weighed the options and decided he was obligated to report the abuse.

The court correctly concluded that Dr. Feldman and the Hospital were immune.

DECLARATION OF DR. LOREN PANKRATZ

The Yuilles next argue that the court erroneously struck portions of their expert's (Dr. Loren Pankratz) declaration.

The court struck Dr. Pankratz's declaration for a number of reasons. Laying aside his legal conclusions (Dr. Feldman was not required to report because he was a consultant), the declaration essentially concludes that Dr. Feldman was negligent and wrong. Again given the work-up here of a comprehensive medical report by a multidisciplinary team, we find no showing of bad faith, even if the diagnosis ultimately turns out to be wrong. Dr. Feldman had a duty to report his conclusions. RCW 26.44.030(1)(a).

We affirm the summary dismissal of the Yuilles' claims against Dr. Feldman and Children's Hospital and Medical Center.

BROWN, C.J., concurs.

KATO, J. (dissenting) — Munchausen syndrome by proxy (MSBP) is a rare medical-psychiatric disorder. Eric G. Mart, Ph.D., *Problems with the Diagnosis of Factitious Disorder by Proxy in Forensic Settings*, 17 AMERICAN JOURNAL OF FORENSIC PSYCHOLOGY 69 (1999). In an earlier case, *Miles v. Child Protective Servs. Dep't*, 102 Wn. App. 142, 6 P.3d 112 (2000), *review denied*, 142 Wn.2d 1021 (2001), Dr. Kenneth Feldman also diagnosed MSBP. Assuming without holding that Dr. Feldman negligently diagnosed MSBP, the Court of Appeals decided the doctor was immune from liability as a matter of law because no reasonable person could find that he acted without good faith. The majority here similarly holds that reasonable minds could not differ that Dr. Feldman acted in good faith.

Many of the material facts are undisputed. One psychologist had concluded several years before that Ms. Yuille did

not suffer from MSBP. When the Yuilles were adopting Dakota, a doctor assuaged the adoption counselor's concern over the boy's health. With Wyatt, a doctor thought Ms. Yuille may have caused his illnesses, but no longer believed that was the case. Ms. Yuille was later suspected again of MSBP. Dr. Feldman, a pediatrician, was called on to evaluate the children. To him, the birth and medical records did indeed suggest MSBP even though other doctors had ruled it out as to these same children. This was not the first time that Dr. Feldman had diagnosed MSBP in a parent or a prospective parent. Although these facts may be undisputed, the issue is whether the reasonable inferences from them show that the doctor acted in good faith as a matter of law.

The evidence and its reasonable inferences must be viewed in a light most favorable to the Yuilles. *Schaaf v. Highfield*, 127 Wn.2d 17, 896 P.2d 665 (1995). So viewed, Dr. Feldman apparently has a penchant for diagnosing (or misdiagnosing) MSBP, notwithstanding its rarity and his questioned qualifications to make that diagnosis. *Miles* is not dispositive; rather it provides history on Dr. Feldman that the Yuilles can point to in showing bad faith. Whether the doctor acted in good faith cannot be determined as a matter of law in these circumstances. It is a question for the jury to decide, not the court. I therefore respectfully dissent.

Review denied at 148 Wn.2d 1003 (2003).