IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

AZITA SHIRKHANLOO,

                 Appellant,

    v.

LAURIE OLSON GAINES and
EDWARD SCHAU,

            Respondents.

NO. 70336-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 14, 2014

LEACH, J. — Azita Shirkhanloo appeals the trial court's summary dismissal of her claims against Laurie Gaines and Dr. Edward Schau based upon quasi-judicial immunity. Her complaint alleged that in a dissolution proceeding, Gaines performed a negligent parenting evaluation and Schau performed negligent psychological testing of the divorcing parents. Because Gaines and Schau have quasi-judicial immunity from Shirkhanloo's claims, we affirm.

## FACTS

In 2009, Timothy Smith sought a dissolution of his marriage to Shirkhanloo.[1] Both Shirkhanloo and Smith sought custody of their son, N.S.S.

---

[1] In re the Marriage of Smith, No.09-3-03369-6 (King County Super. Ct., Wash. May 7, 2009).

On August 3, 2009, the trial court appointed Gaines as a parenting plan evaluator to "investigate and report factual information to the Court concerning parenting arrangements for the child" based upon the child's best interests. At Gaines's request, Schau conducted psychological testing of both Shirkhanloo and Smith. Schau reported to Gaines the results of this testing.

Gaines submitted an interim report to the court on November 30, 2009, recommending further testing of Shirkhanloo. On April 23, 2010, the court ordered Schau to conduct additional psychological testing on Shirkhanloo. After Schau completed this testing and reported the results to Gaines, Gaines submitted a final parenting evaluation. In this September 9, 2010 report, she recommended that the court award full custody of N.S.S. to Smith. She based her recommendation on direct interviews with both parents, parent-child observations, telephone interviews with third parties, consultations with other parenting evaluators, cultural experts, court records, and court transcripts.

After a September 2010 mediation, Shirkhanloo and Smith signed a CR 2A agreement confirming the recommendations, including custody, in Gaines's final parenting evaluation. A year later, Shirkhanloo moved to vacate the CR 2A agreement. In September 2011, the court granted Shirkhanloo's motion to vacate this agreement, returned custody to Shirkhanloo, and ordered a trial. After trial, the court entered a permanent parenting plan placing N.S.S. with Shirkhanloo.

On May 21, 2012, Shirkhanloo sued Gaines, claiming that Gaines "engaged in extreme, outrageous and reckless conduct and grossly misused her authority, constituting the Torts of Outrage and Intentional Infliction of Emotional Distress of the Plaintiff and the child [N.S.S.], and has seriously damaged the child and the mother-child relationship . . . ." On July 23, 2012, Shirkhanloo filed an amended complaint, adding Schau as a defendant.

On February 1, 2013, Gaines moved for summary judgment. Schau joined this motion and also filed a separate motion for summary judgment. On April 15, 2013, the court granted summary judgment in favor of Gaines and Schau, dismissing Shirkhanloo's claims with prejudice. On its order, the court wrote, "Gaines conducted a parenting evaluation and Schau conducted psychological testing, both pursuant to the court's order. Thus, both Gaines and Schau enjoyed absolute quasi-judicial immunity for acts pursuant to that appointment. Reddy v. Karr, 102 Wn. App. 742, 748, 9 P.3d 927 (2000)."

Shirkhanloo appeals.

## STANDARD OF REVIEW

We review de novo a trial court's order granting summary judgment.[2] Summary judgment is appropriate if, viewing the fact and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material

---

[2] Janaszak v. State, 173 Wn. App. 703, 728, 297 P.3d 723 (2013) (citing Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003)).

fact exist and the movant is entitled to judgment as a matter of law.[3] A genuine issue of material fact exists if reasonable minds could differ about the facts controlling the outcome of the lawsuit.[4]

A defendant may move for summary judgment by demonstrating an absence of evidence to support the plaintiff's case.[5] If the defendant makes this showing, the burden shifts to the plaintiff to establish the existence of an element essential to her case.[6] If the plaintiff fails to meet her burden as a matter of law, summary judgment for the defendant is proper.[7]

### ANALYSIS

Shirkhanloo claims,

> The court ignored a series of cases that "c[ar]ved out" exceptions to the general rule providing for absolute quasi-judicial immunity for court appointed evaluation and investigation experts and witnesses such as the defendants. The court as well ignored extensive facts that could have and should have been allowed to be presented and argued at a trial that showed that both defendants had not carried out their court appointed duties, had strayed far from their scope of appointed duties, had not followed professional and ethical standards required of a [parenting evaluator] and a licensed clinical psychologist, and had perpetrated a fraud on the (trial court), and thus were not entitled to protection under Reddy v. Karr (and other related cases) as to absolute quasi-judicial immunity.

---

[3] Janaszak, 173 Wn. App. at 728 (citing CR 56(c); Michak, 148 Wn.2d at 794-95).

[4] Janaszak, 173 Wn. App. at 728 (citing Hulbert v. Port of Everett, 159 Wn. App. 389, 398, 245 P.3d 779 (2011)).

[5] Knight v. Dep't of Labor & Indus., __Wn. App.__, 321 P.3d 1275, 1278 (2014) (quoting Sligar v. Odell, 156 Wn. App. 720, 725, 233 P.3d 914 (2010)).

[6] Knight, 321 P.3d at 1278 (quoting Sligar, 156 Wn. App. at 725).

[7] Knight, 321 P.3d at 1278.

-4-

Immunity from suit provides "an 'entitlement not to stand trial or face the other burdens of litigation.'"[8] The common law provides judges with absolute immunity for acts performed within their judicial capacity.[9] "Quasi-judicial immunity 'attaches to persons or entities who perform functions that are so comparable to those performed by judges that it is felt they should share the judge's absolute immunity while carrying out those functions.'"[10] Functions integral to judicial proceedings include judging, advocating, fact-finding, and testifying.[11]

RCW 26.12.050(1)(b) authorizes a superior court to appoint investigators and other personnel that the court finds necessary to carry on the family court's work. The court's work includes making temporary and permanent decisions about parenting plans and custody of children.[12] Court-appointed investigators and evaluators provide the court with information as the court deems necessary to resolve parenting controversies between divorcing parents.[13] The court appoints these investigators and evaluators, who serve at the court's pleasure.[14]

---

[8] Janaszak, 173 Wn. App. at 712 (internal quotation marks omitted) (quoting Feis v. King County Sheriff's Dep't, 165 Wn. App. 525, 538, 267 P.3d 1022 (2011)).

[9] Janaszak, 173 Wn. App. at 729 (citing Lallas v. Skagit County, 167 Wn.2d 861, 864, 225 P.3d 910 (2009)).

[10] Reddy v. Karr, 102 Wn. App. 742, 745, 9 P.3d 927 (2000).
, 102 Wn. App. at 748 (quoting Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 99, 829 P.2d 746 (1992)).

[11] Gilliam v. Dep't of Soc. & Health Servs., 89 Wn. App. 569, 583-84, 950 P.2d 20 (1998).

[12] RCW 26.12.190(1).

[13] RCW 26.12.190(2).

[14] RCW 26.12.050(3).

In Reddy v. Karr,[15] a court commissioner appointed a King County Family Services employee during a dissolution proceeding to investigate which of two parents should receive custody of their child. The mother sued the investigator, alleging that the investigator performed a negligent parenting evaluation.[16] This court affirmed the trial court's grant of summary judgment, concluding that the investigator was entitled to quasi-judicial immunity because she acted as an "arm of the court" in carrying out her court-ordered investigation.[17] This court reasoned,

> Courts have the grave obligation to serve the best interests of minor children of divorcing parents with respect to where the child shall primarily reside and other issues of great importance to the child, its parents and society as a whole. Courts do not ordinarily perform independent investigations; rather the adversary system of justice ordinarily requires that parties to litigation investigate and present evidence from which the court finds facts and applies legal principles in order to resolve controversies. But the unique obligation of courts to serve the best interests of minor children in cases of divorce often requires independent investigations of allegations between warring parents, professional evaluation of parenting abilities, determination of the degree of bonding between children and each parent—not to mention the wisdom of Solomon when the most expedient solution might appear to be to "saw the baby in half." Judges cannot personally perform these independent investigations and evaluations, due not only to the volume of cases but also to the impropriety of ex parte contact between judges, parties and witnesses. Accordingly, a surrogate is necessary. Family court investigators and evaluators performing court-ordered services do so as surrogates for the court.[18]

---

[15] 102 Wn. App. 742, 745, 9 P.3d 927 (2000).
[16] Reddy, 102 Wn. App. at 747.
[17] Reddy, 102 Wn. App. at 749.
[18] Reddy, 102 Wn. App. at 749-50.

This court also noted that the investigator had no decision-making authority or capacity to effect her recommendations; the court retained sole responsibility for making parenting plan decisions.[19]

Here, as in Reddy, the court appointed Gaines and Schau to perform independent investigations and evaluations for the court to use in finding facts and adopting a parenting plan. The court, not Gaines and Schau, had independent decision-making authority over the divorcing parents. As family court investigators performing court-ordered evaluations to assist the court in developing a parenting plan for N.S.S., Gaines and Schau acted as arms of the court entitled to quasi-judicial immunity from civil liability for their acts taken to complete their evaluations.

Shirkhanloo relies upon Buckley v. Fitzsimmons,[20] Fletcher v. Kalina,[21] and Yuille v. Department of Social and Health Services[22] to support her argument. She alleges, "[T]he courts appear consistent in denying absolute immunity when the actor engages in grossly inappropriate and/or unethical behavior as is the case here with Ms. Gaines (and Dr. Schau)." We disagree.

In Buckley, the United States Supreme Court addressed the "functional approach" to deciding if absolute or qualified immunity applies to challenged conduct. The Court explained that this inquiry focuses on "'the nature of the

---

[19] Reddy, 102 Wn. App. at 750.
[20] 509 U.S. 259, 113 S. Ct. 2606, 126 L. Ed. 2d 209 (1993).
[21] 93 F.3d 653 (9th Cir. 1996), aff'd, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997).
[22] 111 Wn. App. 527, 45 P.3d 1107 (2002).

function performed, not the identity of the actor who performed it.'"[23] The Court stated,

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."[24]

The Supreme Court concluded that a prosecutor functions as an investigator rather than an advocate before the establishment of probable cause to arrest or the initiation of judicial proceedings and, thus, is entitled only to qualified immunity in that role.[25]

In Buckley, the Court applied qualified, not absolute immunity to the prosecutor after he allegedly fabricated evidence and made inflammatory remarks during a press conference announcing the plaintiff's arrest.[26] The alleged fabrication of evidence occurred before the establishment of probable cause to arrest.[27] The prosecutor's conduct at a press conference, while occurring after the arrest, "d[id] not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these

_____

[23] Buckley, 509 U.S. at 269 (quoting Forrester v. White, 484 U.S. 219, 229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)).

[24] Buckley, 509 U.S. at 273 (quoting Hampton v. City of Chicago, 484 F.2d 602, 608 (7th Cir. 1973)).

[25] Buckley, 509 U.S. at 274.

[26] Buckley, 509 U.S. at 276-77.

[27] Buckley, 509 U.S. at 275.

functions."[28] Because the statements to the media had no "functional tie to [the] judicial process," qualified, not absolute, immunity was proper.[29]

In Fletcher, the United States Court of Appeals for the Ninth Circuit applied only qualified immunity to a prosecutor who allegedly made false statements in an affidavit supporting an application for an arrest warrant.[30] The court reasoned that the prosecutor's actions in writing, signing, and filing the declaration for an arrest warrant were "virtually identical" to a police officer's actions in making false statements in an application for an arrest warrant, which receive only qualified immunity.[31]

In Yuille, a physician concluded that a prospective adoptive mother suffered from Munchausen syndrome by proxy and, thus, recommended removing a child from its home.[32] After a proposed adoption failed, the prospective adoptive mother and her spouse brought a negligence action against the physician and the hospital. The court held that the physician and the hospital were entitled to good faith immunity from suit afforded to health care providers who report child abuse under RCW 26.44.060(1)(a).[33]

These cases do not address the doctrine of quasi-judicial immunity at issue here. Therefore, Shirkhanloo misplaces her reliance on these cases. And

---

[28] Buckley, 509 U.S. at 278.
[29] Buckley, 509 U.S. at 277.
[30] Fletcher, 93 F.3d at 655.
[31] Fletcher, 93 F.3d at 655-56.
[32] Yuille, 111 Wn. App. at 529.
[33] Yuille, 111 Wn. App. at 535.

although Shirkhanloo claims that Gaines and Schau "lost qualified immunity," she fails to establish that qualified immunity applies here.

Shirkhanloo also relies upon RCW 7.70.010, which addresses actions for injuries resulting from health care. Washington courts define "health care" under this statute as "'the process in which [a physician is] utilizing the skills which he [or she] had been taught in examining, diagnosing, treating or caring for the plaintiff as his [or her] patient.'"[34] Shirkhanloo fails to show that either Gaines or Schau provided or that the court expected them to provide health care as part of their court-assigned duties. Accordingly, this statute does not apply.

Because we afford quasi-judicial immunity to both Gaines and Schau, we do not address Gaines's argument that she and Schau are also entitled to immunity as expert witnesses.

## CONCLUSION

Because Gaines and Schau acted as "arms of the court" when performing their court-ordered functions, they are entitled to quasi-judicial immunity against Shirkhanloo's claims. We affirm.

_Leach, J._

WE CONCUR:

_____

---

[34] Wright v. Jeckle, 104 Wn. App. 478, 481, 16 P.3d 1268 (2001) (alterations in original) (internal quotation marks omitted) (quoting Branom v. State, 94 Wn. App. 964, 969-70, 974 P.2d 335 (1999)).