# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SUSAN CHEN as parents and natural guardians of J.L., a minor, and L.L., a minor, and NAIXIANG LIAN, as parents and natural guardians of J.L., a minor, and L.L., a minor,<br><br>Appellants,<br><br>v.<br><br>KATE HALAMAY, M.D., and ALLEGRO PEDIATRICS (previously known as Pediatric Associates),<br><br>Respondents. | No. 76929-4-I<br><br>(Consolidated with No. 78829-9-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: February 10, 2020 |

LEACH, J. — Pro se litigants Susan Chen and Naixiang Lian, as parents and guardians of J.L. and L.L.[1] (collectively Chen), appeal the summary judgment dismissal of their lawsuit against Dr. Kate Halamay and Allegro Pediatrics and the subsequent denials of their motion for reconsideration and motion to vacate. Chen claims that questions of fact exist about whether Dr. Halamay acted negligently or in bad faith by reporting Chen to Child Protective Services (CPS) for suspected child abuse and that numerous procedural irregularities justify reversal. Because Chen fails to establish error, we affirm.

---

[1] We grant Chen's motion to use initials to refer to their minor children.

FACTS

In August 2012, Chen brought her two-year-old son, J.L., to Allegro Pediatrics, expressing concerns that he might have autism. Staff members provided referrals for speech therapy, a hearing assessment, and evaluations at the Seattle Children's Hospital autism clinic and the Kindering Center. In October 2012, Allegro staff attempted to follow up with J.L.'s parents to check the status of his progress, as it did not appear that J.L. had been seen at the autism clinic or at Kindering. But they were unable to reach the family.

On November 15, 2012, a physical therapist at Seattle Children's Hospital assessed J.L. as having some characteristics of a child on the autism spectrum. The therapist recommended additional therapy and follow-up with the Kindering Center and faxed her treatment notes to Allegro. J.L.'s family subsequently moved to Oregon for several months before returning to Washington. While in Oregon, they took J.L. to Dr. John Green.

On August 31, 2013, Chen again brought J.L. to Allegro, where he was seen for the first time by Dr. Halamay. Shortly before this visit, laboratory tests ordered by Dr. Green and performed at Seattle Children's Hospital indicated abnormal kidney function. Chen reported that J.L. was exhausted, urinating more than usual, and was interested only in eating meat. After consulting with a nephrology fellow, Dr. Halamay provided Chen with an urgent referral order to Seattle Children's Hospital nephrology clinic. On September 5, 2013, Chen took J.L. to the nephrology clinic. The doctor indicated that J.L.'s lab results appeared to be improving and that the prior abnormal results may have

been obtained at a time that J.L. was dehydrated "given his history of diarrhea and inability to access fluids." The clinic recommended repeat lab tests in three weeks, with follow-up at the nephrology clinic if needed.

Chen brought J.L. for a second visit with Dr. Halamay on September 16, 2013. Chen stated that J.L. was very gassy, sometimes has a "stiff" stomach, and cries a lot. Although J.L.'s gastroenterologist had recommended constipation medication and stool studies, Chen did not think J.L. was constipated and did not have the studies done. Dr. Halamay ordered lab tests, instructed Chen to refrain from restricting J.L from fluids, and provided a referral to Seattle Children's Hospital for further neurodevelopmental evaluation.

On September 19, 2013, J.L.'s speech therapist, Jennifer Dierenfeld, contacted Dr. Halamay to seek more information about the family. Dierenfeld expressed concern that J.L. has "extreme sensory dysregulation" and "cries inconsolably" during sessions. She stated that Chen "becomes extremely frustrated" when J.L. cries and "even threw an object during one of the sessions." Dierenfeld further stated that another therapist observed Chen "raise her hand toward [J.L.] but did not actually hit him." Given this information, Dr. Halamay planned to recommend to Chen that they enter social and behavioral therapy and further evaluate J.L.'s sensory issues.

On September 23, 2013, Dr. Halamay called Chen to discuss J.L.'s lab results and her recommendations. Chen was "extremely concerned" about J.L.'s thyroid lab values and requested an urgent referral to Dr. Kletter, a pediatric endocrinologist, which Dr. Halamay provided. Dr. Halamay also discussed Dierenfeld's concerns about the

need for sensory and behavioral therapy, but Chen declined. Dr. Halamay asked Chen to bring J.L for a follow-up visit in the next one to two weeks.

Three days later, Dr. Halamay spoke with a gastroenterology physician's assistant at Seattle Children's Hospital who opined that J.L. should be further evaluated for abdominal distension and gas issues. Because Chen said she did not want J.L. to be seen by Seattle Children's Hospital, Dr. Halamay referred J.L. to Swedish Medical Center and asked Chen to make a follow-up appointment for J.L. at Allegro within the next week.

At J.L.'s third visit with Dr. Halamay, on October 7, 2013, Chen reported that J.L. continued to have abdominal pain and gas which had by then been present for six weeks. Chen declined Dr. Halamay's recommendations for J.L. to participate in development or behavioral therapies or to be seen by the Seattle Children's Hospital gastroenterology clinic. Dr. Halamay again recommended that Chen take J.L. to Swedish Medical Center as an alternative, but Chen said she preferred to take J.L. to Dr. Arthur Krigsman, a pediatric gastroenterologist in Texas. Chen asked Dr. Halamay to order a "page-long list of tests" that had allegedly been requested by Dr. Krigsman, some of which Dr. Halamay had never heard of. Given her unfamiliarity with Dr. Krigsman and the tests, Dr. Halamay declined. She offered to order an X-ray to check J.L.'s stool burden, but Chen declined.

On October 19, 2013, J.L. saw Dr. Roberta Winch, another pediatrician at Allegro. Chen reported that J.L. was tired, sweaty, and had swelling in his knees and feet. Dr. Winch examined J.L. She determined that he had abdominal pain and

distension requiring immediate evaluation at the Seattle Children's Hospital emergency department. After "significant persuasion," Chen agreed to take J.L. there immediately. However, Chen and J.L. did not show.

The following day, an Allegro nurse called Chen to check on J.L. Chen stated that she did not take J.L. to the emergency department because her other child was sick but agreed to schedule a follow-up appointment for J.L. if necessary. That afternoon, Chen took J.L. to the Seattle Children's Bellevue urgent care clinic. There, providers recommended that he be seen at the Seattle Children's Hospital emergency department. Chen became upset and left the clinic with J.L. against medical advice.

Later that evening, Chen took J.L. to the Seattle Children's Hospital emergency department. There, providers noted that J.L. seemed irritable, tired, and limp, with a distended abdomen and critically abnormal lab results. After further testing and consultation, providers allowed J.L. to return home on the condition that Chen promptly follow up on J.L.'s nephrology, gastroenterology, and endocrinology treatment orders.

On October 22, 2013, a Seattle Children's Hospital nurse contacted Allegro to express concern that Chen would fail to follow up with J.L.'s treatment plan. The next day, Dr. Hal Quinn of Mercer Island Pediatrics called Dr. Halamay to express his concerns about the family. He informed her that Chen had taken J.L. to see him several times during the time Chen was also bringing J.L. to see Dr. Halamay. And Chen had also asked him to order long lists of tests. Dr. Quinn felt that J.L. was very sick and expressed concern that J.L was not receiving appropriate medical attention despite seeing numerous doctors. Dr. Quinn stated that one of his partners recently saw J.L.

and recommended that he be seen at the emergency department, but Chen refused. Dr. Quinn discussed the situation with a gastroenterologist, who expressed great concern and wanted to see J.L. Dr. Quinn also spoke with Dr. Metz of the Seattle Children's Suspected Child Abuse and Neglect (SCAN) team, who recommended that J.L. be admitted to the hospital. Dr. Halamay later contacted Dr. Metz, who reiterated that J.L. should be admitted to the hospital to coordinate his care, provide social support for the family, and to determine whether SCAN team involvement would be necessary.

Chen took J.L. to see Dr. Halamay for the fourth and final time on October 23, 2013. J.L. was tired, with a distended abdomen and abnormal lab values. Chen told Dr. Halamay she did not want to take J.L. to Seattle Children's Hospital because she has "no confidence" in them and "[t]hey have not done anything for him." Dr. Halamay told Chen she felt admission was medically necessary, but Chen said she would find her own specialists. Dr. Halamay told Chen that if she refused to bring J.L. to Seattle Children's Hospital, she would need to contact CPS to ensure that J.L. received necessary medical attention. Chen became angry and left with J.L.

Dr. Halamay concluded that J.L. had significant and potentially life threatening renal, abdominal, liver, weight loss, failure to thrive, and gastrointestinal issues, all without a clear etiology. She further concluded there was a reasonable suspicion that J.L. was a victim of medical neglect, that J.L.'s parents were not following up on medically necessary care, and that the gravity of J.L.'s condition prevented any flexibility delaying diagnostic studies and follow-up examinations. Dr. Halamay therefore reported concerns of medical neglect to CPS on October 23, 2013.

Later that day, a CPS social worker picked up J.L and Chen and transported them to Seattle Children's Hospital. A clinical exam showed gross malnutrition and muscle wasting suspected to result from medical neglect. J.L. was removed from Chen's custody, and the Department of Social and Health Services (DSHS) initiated dependency proceedings.[2]

After an investigation of Dr. Halamay's report, the Redmond Police Department determined probable cause existed to charge Chen with criminal mistreatment in the second degree. The King County Prosecuting Attorney filed a criminal information against Chen on January 31, 2014. However, in September 2014, DSHS asked the court to dismiss the dependency petition based on its finding that Chen did not refuse to admit J.L. to the hospital against medical advice on October 20, 2013. The court dismissed J.L.'s dependency action, and J.L. was returned to his parent's care. The State also dropped the criminal charge against Susan "due to evidence discovered after the time of filing."

On October 24, 2016, Chen filed a lawsuit pro se, asserting claims of medical negligence against Dr. Halamay and Allegro Pediatrics based on her decision to refer Chen to CPS.[3] Chen alleged that on October 23, 2013, Dr. Halamay misdiagnosed J.L.'s medical condition, failed to contact J.L.'s main treating physicians, failed to review his full medical records, and failed to provide accurate information to CPS, resulting in

---

[2] DSHS also initiated dependency proceedings against L.L. but returned him to his parents' custody after the hearing.

[3] Chen's claims against Allegro were based on a respondeat superior theory of liability.

J.L.'s wrongful removal from the home and causing emotional and mental pain and suffering to all four family members and developmental delay and brain damage to J.L.

On December 8, 2016, Dr. Halamay and Allegro moved for summary judgment, asserting immunity from liability under Washington's child abuse reporting statute.[4] To support the motion, Dr. Halamay and Allegro produced Dr. Halamay's declaration, redacted excerpts from J.L.'s medical records, and a redacted copy of the Redmond Police Department incident report regarding their investigation following the CPS report.

The court scheduled the summary judgment hearing for January 6, 2017. After Chen retained counsel, the defendants agreed to reschedule the hearing for February 24, 2017. Then counsel for Chen withdrew. On February 13, 2017, Chen asked for an eight-month continuance of the summary judgment hearing, which the defendants opposed. At the hearing, Chen appeared with Twyla Carter, her former attorney from her criminal matter. Carter told the court that she was not representing Chen but was appearing as a witness to explain that the case was "complicated" and to assert that she needed time to help Chen find an attorney. Although Chen had requested a Mandarin interpreter for the hearing, Carter informed the court that Chen wanted a Cantonese interpreter. The defendants agreed to a short continuance to obtain an interpreter. The trial court agreed to appoint an interpreter, granted a three-month continuance, and rescheduled the hearing for May 12, 2017.

On April 13, 2017, Dr. Halamay and Allegro filed a renewed motion for summary judgment. Chen failed to file a timely response. On May 10, 2017, Chen filed a notice

---

[4] Ch. 26.44 RCW.

of unavailability due to a medical problem and requested a continuance of at least two weeks. The court denied Chen's request and stated that it would rule on defendants' motion without oral argument.

On May 11, 2017, the scheduled date for the summary judgment hearing, Chen e-mailed the court requesting appointment of counsel. After considering the materials submitted by both parties, including Chen's most recent e-mail, the court granted summary judgment in favor of the defendants and dismissed Chen's claims with prejudice. In its order, the court noted as follows:

> The court excused Ms. Chen from appearing at the summary judgment hearing on May 11, 2017 pursuant to her notice of unavailability. The summary judgment had already been continued once before at her request. The court entered this order on summary judgment based upon the written filings of the parties.

Chen filed a pro se motion for reconsideration. In support, she attached three unauthenticated e-mails which were purportedly authored by two of J.L.'s providers and a copy of an e-mail Chen previously sent to the court. The trial court denied Chen's motion. Chen timely filed a notice of appeal seeking review of the orders granting summary judgment and denying reconsideration.

Chen later asked for appointment of counsel and a guardian ad litem for her appeal. On February 7, 2018, the Washington Supreme Court denied Chen's request for expenditure of public funds. Three weeks later, the trial court appointed a guardian ad litem for J.L. and L.L. for the limited purpose of "explain[ing] . . . the current status of the proceedings and what options the minors have at this point." The guardian ad litem,

noting that Chen wanted to file a CR 60 motion to vacate, indicated that it would be in the children's best interest to appoint counsel to represent them in that matter.

On May 10, 2018, Chen filed a pro se CR 60 motion to vacate the trial court's orders granting summary judgment and denying reconsideration. She also filed a supplemental brief seeking appointment of counsel. The court granted Chen's request for appointed counsel for the limited purpose of drafting J.L.'s reply to the defendants' response and appearing at the show cause hearing to argue on behalf of J.L. After a hearing, the trial court judge denied Chen's motion to vacate. Chen filed a pro se motion to set aside the judgment or, in the alternative, to reconsider the denial of her motion to vacate, which the court denied. Chen timely appealed these orders, and this court consolidated Chen's two appeals.

## STANDARDS OF REVIEW

We review a summary judgment order de novo, engaging in the same inquiry as the trial court.[5] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party and affirm summary judgment only when the evidence presented demonstrates no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[6] "A material fact is one upon which the outcome of the litigation depends in whole or in part."[7]

---

[5] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).
[6] Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).
[7] Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

The application of this standard uses a burden shifting scheme. A party may meet this burden in one of two ways: it may "'set[ ] out its own version of the facts or . . . alleg[e] that the nonmoving party failed to present sufficient evidence to support its case.'"[8] If the defendant requests summary judgement and alleges an absence of material facts supporting the plaintiff's case, then the burden shifts to the plaintiff to present a prima facie case for the essential elements of its claim.[9]

We review a trial court's denial of a motion for reconsideration, motion for a continuance, and denial of a CR 60 motion to vacate a judgment for an abuse of discretion.[10] To determine that the trial court abused its discretion, we must find that the "exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons."[11]

## ANALYSIS

A pro se litigant is bound by the same rules of procedure and substantive law as a licensed attorney.[12] With this in mind, we proceed with an analysis of the issues presented in this case.

---

[8] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 70, 170 P.3d 10 (2007) (quoting Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 350, 144 P.3d 276 (2006)).
[9] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).
[10] Rivers v. Wash. State Conf. of Mason Contractors, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002) (motion for reconsideration); Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989) (motion for a continuance); Mitchell v. Wash. State Inst. of Pub. Policy, 153 Wn. App. 803, 821, 225 P.3d 280 (2009) (motion to vacate).
[11] Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995).
[12] In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993); Westberg v. All-Purpose Structures, Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

## Summary Judgment

Chen argues that the trial court should not have dismissed her claims because the defendants failed to show the absence of a material issue of fact as to whether Dr. Halamay's CPS report met the standard of care and the requirement of good faith reporting. We disagree.

RCW 26.44.030(1)(a) requires "any practitioner" to report to "the proper law enforcement agency or to the department" whenever they have "reasonable cause to believe that a child has suffered abuse or neglect." RCW 26.44.060(1)(a) provides in part,

> [A]ny person participating in good faith in the making of a report pursuant to this chapter or testifying as to alleged child abuse or neglect in a judicial proceeding shall in so doing be immune from any liability arising out of such reporting or testifying under any law of this state or its political subdivisions.

The reporter has the burden of proving the report was made in good faith.[13]

Here, Dr. Halamay made a prima facie showing of good faith through her declaration and supporting documents:

> Based upon my experience, training, education and my review of the medical record for JL, along with my care and treatment of him on multiple visits, along with the information I was provided regarding JL's condition and the concerns that other healthcare providers had of JL's situation and concern for medical neglect, and given the gravity of JL's condition and the risks that JL's parents would continue to fail or delay in the obtaining of essential diagnostic studies and/or medical evaluations in the face of a life-threatening condition, it is my opinion that the reporting of suspected medical neglect to CPS was reasonably prudent and required by the Washington child abuse reporting statutes.

---

[13] Yuille v. State, 111 Wn. App. 527, 533, 45 P.3d 1107 (2002).

Although Chen asserted that she had "tons of evidence supporting the merits of the case," and despite receiving a nearly three-month continuance, she did not engage in discovery and did not file a substantive response to the defendants' motion.[14] Chen's allegations and conclusory statements of fact unsupported by evidence are not sufficient to establish a genuine issue of fact to overcome summary judgment.[15]

Chen argues that Dr. Halamay acted in bad faith by failing to consult all physicians who provided services to J.L. before making her report. She contends that the eventual dismissal of the dependency and criminal actions proves that Dr. Halamay's CPS report was false. "But there is no legal requirement that information giving rise to a suspicion of child abuse be investigated or verified before it is reported."[16] The purpose of immunity—to encourage those who suspect child abuse to report it—"would be undermined if immunity fell with a showing that the report was unverified or lacked investigation."[17] Because the duty to investigate lies with the authorities, not the individual making the report, failure to verify or investigate does not rule out immunity.[18] The question is whether the reporter acted "'with a reasonable good faith intent, judged in light of all the circumstances then present.'"[19] The evidence

---

[14] A party may move for summary judgment before discovery is complete. Perez-Crisantos v. State Farm Fire & Cas. Co., 187 Wn.2d 669, 685-86, 389 P.3d 476 (2017).

[15] Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

[16] Whaley v. State, 90 Wn. App. 658, 668, 956 P.2d 1100 (1998).

[17] Yuille, 111 Wn. App. at 534.

[18] See RCW 26.44.050; Whaley, 90 Wn. App. at 668.

[19] Whaley, 90 Wn. App. at 669 (quoting Dunning v. Pacerelli, 63 Wn. App. 232, 240, 818 P.2d 34 (1991)).

-13-

supports a reasonable inference, and no contrary inference, that Dr. Halamay met this standard.

Chen asserts that Dr. Halamay's acts and omissions constituted medical negligence. However, "to defeat summary judgment in almost all medical negligence cases, the plaintiffs must produce competent medical expert testimony establishing that the injury was proximately caused by a failure to comply with the applicable standard of care."[20] "The expert testimony must establish what a reasonable medical provider would or would not have done under the circumstances, that the defendant failed to act in that manner, and that this failure caused the plaintiff's injuries."[21] Chen did not submit expert testimony or any other evidence in support of her claim.

Chen next argues that the defendants' CR 56 summary judgment motion was transformed into a CR 12(b) motion when they submitted an amended summary judgment motion containing a footnote alleging lack of personal jurisdiction. She contends that this footnote requires that we evaluate the summary judgment motion as if it were a motion to dismiss under CR 12(b), including treating the allegations in her complaint as if they were established.[22] But Chen cites no authority for the proposition that the inclusion of a footnote referencing a potential jurisdictional defense converts a substantively based CR 56 motion for summary judgment into a CR 12(b) motion to dismiss on jurisdictional grounds. To the contrary, motions based on the pleadings are

---

[20] Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001).
[21] Reagan v. Newton, 7 Wn. App. 2d 781, 791, 436 P.3d 411, review denied, 193 Wn.2d 1030 (2019).
[22] State v. LG Elecs., Inc., 185 Wn. App. 394, 406, 341 P.3d 346 (2015).

considered under CR 56 if "matters outside the pleadings are presented to and not excluded by the court."[23] CR 12(b) does not apply.

Next, Chen argues that the trial court should have provided her with a fair opportunity to present her case at oral argument. Chen relies on King County Super. Ct. Local Civ. R. 56(c)(1), which provides that "[t]he court shall decide all summary judgment motions after oral argument, unless the parties waive argument." Noting that "'waiver is the intentional and voluntary relinquishment of a known right,'"[24] Chen asserts that her request for a two-week continuance of the hearing for medical reasons does not constitute waiver and that the procedural irregularity requires reversal. We disagree.

Here, the trial court ruled that "[g]iven the fact that the matter has already been continued once before, the Court will rule on the defense motion based upon the materials already filed on the merits of the underlying motion without oral argument."

> The trial court may deny a motion for a continuance when (1) the requesting party does not have a good reason for the delay in obtaining the evidence, (2) the requesting party does not indicate what evidence would be established by further discovery, or (3) the new evidence would not raise a genuine issue of fact.[25]

Given that Chen failed to submit evidence or briefing in opposition to summary judgment despite a three-month continuance and Carter's assistance, this decision was not an abuse of discretion. More fundamentally, procedural due process does not

---

[23] CR 12(b)(7); CR 12(c).

[24] McLain v. Kent Sch. Dist., No. 415, 178 Wn. App. 366, 378, 314 P.3d 435 (2013) (internal quotation marks omitted) (quoting Schroeder v. Excelsior Mgmt. Grp., LLC, 177 Wn.2d 94, 106, 297 P.3d 677 (2013)).

[25] Butler v. Joy, 116 Wn. App. 291, 299, 65 P.3d 671 (2003).

mandate oral argument on a written motion. "Rather, oral argument is a matter of discretion, so long as the movant is given the opportunity to argue in writing his or her version of the facts and law."[26] Chen had ample opportunity to advance her arguments in writing. King County Super. Ct. Local Civ. R. 56(c)(1) does not create a due process right to oral argument.

Chen next asserts that reversal is required because the trial court judge did not enter written findings of fact and conclusions of law. But CR 52(a)(5)(B) expressly provides that findings of fact and conclusions of law are not necessary "[o]n decisions of motions under rules 12 or 56 or any other motion, except as provided in rules 41(b)(3) and 55(b)(2)." Cases cited by Chen pertain to judgments entered in cases where findings are required and thus have no applicability here.

Next, Chen contends that the trial court lacked jurisdiction to dismiss J.L. and L.L.'s claims with prejudice because the trial court failed to appoint a guardian ad litem as required by RCW 4.08.050. Chen is mistaken. A parent may initiate a lawsuit as a guardian on behalf of a minor child.[27] RCW 4.08.050(1) provides that a trial court must appoint a guardian ad litem for children under 14 years of age "upon the application of a relative or friend of the infant." Here, Chen and her husband initiated this lawsuit on behalf of themselves and as parents and natural guardians of J.L. and L.L. They did not ask the trial court to appoint a guardian ad litem at any time before the court entered the order granting summary judgment. Chen cites no authority for the proposition that the

---

[26] State v. Bandura, 85 Wn. App. 87, 93, 931 P.2d 174 (1997).
[27] See, e.g., Taylor v. Enumclaw Sch. Dist. No. 216, 132 Wn. App. 688, 694, 133 P.3d 492 (2006).

-16-

court was obligated on its own initiative to appoint a guardian ad litem because she was representing herself or because English was not her first language.

Motion for Reconsideration of Order Granting Summary Judgment

Chen argues that the trial court abused its discretion in denying her motion for reconsideration under CR 59. She contends that the court based its decision on the following untenable reasons: (1) the court was not required to appoint a guardian ad litem, (2) Dr. Halamay did not have to rebut allegations that she failed to consult with Dr. Green before making her report to CPS, (3) a false police report submitted by the defendants with their summary judgment motion, and (4) denying reconsideration before she filed a reply to the defendant's answer.[28]

We are not persuaded that the trial court erred in denying the motion for reconsideration on any grounds. As previously discussed, Dr. Halamay met her summary judgment burden of demonstrating that her report was made in good faith in light of the circumstances then present. Any deficiencies in the police investigation that followed do not bear on her intent. The trial court did not err in failing to appoint a guardian ad litem. And Chen cites no authority for the proposition that a trial court must provide an opportunity for a reply before ruling on a motion for reconsideration.[29]

---

[28] Although Chen did not specify which subsections of CR 59 apply here, her arguments appear to encompass CR 59(a)(1), irregularity of the court proceeding; CR 59(a)(7), insufficient evidence supporting decision; CR 59(a)(8), error of law; and CR 59(a)(9), lack of substantial justice.

[29] See CR 59(c) (providing that "[t]he court may permit reply affidavits") (emphasis added).

-17-

## Motion To Vacate

We next address the trial court's denial of Chen's motion to vacate. CR 60 exists to prevent injustices based on "reasons extraneous to the action of the court or for matters affecting the regularity of the proceedings."[30] The rule provides that a "court may relieve a party . . . from a final judgment, order, or proceeding" under specified circumstances. One of these circumstances is "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b)."[31]

Chen argues that the trial court failed to properly consider an additional 135 pages of J.L.'s medical records, which she received from Allegro via discovery in other lawsuits. She contends that these newly discovered records revealed significant omissions from records defendants submitted to the court in support of their motion for summary judgment, thus demonstrating that they intentionally and willfully withheld critical medical information.

In denying Chen's motion to vacate, the court ruled,

I don't see any intentional withholding of evidence. I don't see . . . that the new evidence [that] has been alleged now couldn't have been brought before, or frankly, that it would have changed anything in this case.

I also find that . . . the case itself is not meritorious. . . . [K]nowing the statute involving immunity, . . . this Court can state on the record that clearly . . . the referral was made in good faith and that mandatory reporting is encouraged to protect children. . . . And for all of those reasons, the Court is denying the motion.

---

[30] State v. Keller, 32 Wn. App. 135, 140, 647 P.2d 35 (1982).
[31] CR 60(b)(3).

The court's reasoning is sound. Because Chen made no discovery requests before the court granted summary judgment dismissal, she cannot show that the evidence could not have been discovered earlier by due diligence. The defendants were under no obligation to provide full copies of J.L.'s medical records in support of their motion for summary judgment. And given the purposes of the immunity statute, the court did not err in recognizing that the new records would not have changed the result.

Chen also argues that the judge who ruled on the CR 60 motion to vacate lacked authority to hear it because King County Super. Ct. Local Civ. R 60(e)(2) provides that "the show-cause hearing on the motion shall be scheduled . . . before the Respective Chief Judge." However, judges sitting on the superior court in the same county have identical authority.[32] The record indicates that the hearing was originally set before the chief judge and that the judge who heard the motion received the papers the day before the hearing because she was "covering for another officer." No parties objected, and they agreed to proceed. Under these circumstances, the judge had authority to hear and rule on the motion.

Chen further argues that the trial court should have allowed Lian an opportunity to speak at the hearing. But the record shows that Lian did not submit any independent filings and did not ask to address the court, directly or via his interpreter. The court was not required to ask Lian whether he wished to be heard.

---

[32] State ex rel. Campbell v. Superior Court, 34 Wn.2d 771, 775, 210 P.2d 123 (1949); State v. Caughlan, 40 Wn.2d 729, 732, 246 P.2d 485 (1952).

Lastly, Chen argues that the trial court erred in denying her motion to set aside or reconsider her denial of the motion to vacate. She based this motion on cumulative error and did not raise any new claims. The court did not abuse its discretion.

## CONCLUSION

Because the trial court did not err in granting the defendants' motion for summary judgment or in denying Chen's motions for reconsideration and motion to vacate, we affirm.

_Leach, J._

WE CONCUR:

_Smith, J._

_Verellen, J._